*Decision will be entered for respondent.*

VIVIEN KELLEMS, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 427–70.    Filed June 27, 1972.

*David R. Shelton*, for the petitioner.
*David M. Reizes* and *Barry D. Gordon*, for the respondent.

WITHEY, *Judge:* Respondent determined a deficiency in Federal income tax for petitioner for the year ended December 31, 1965, in the amount of $813.30. Respondent has also denied petitioner's claim for refund of taxes for the same year in the amount of $2,939.13. The is-

sues raised by way of the notice of deficiency having been conceded by petitioner at the time of trial, the remaining issue is the allowability of petitioner's claim for refund which is based upon the assertion that the computation of petitioner's tax through the use of rates applicable to single persons rather than married persons constituted an unconstitutional classification.

## FINDINGS OF FACT

Petitioner, a single person from 1947 to the time of trial of this case, resided at East Haddam, Conn., at the time of filing the petition. Both petitioner's 1965 individual return and claim for refund were filed with the district director of internal revenue, Hartford, Conn.

The tax on petitioner's return, as filed, was computed by petitioner on the basis of the rates set forth in section 1(a)(2) of the Internal Revenue Code of 1954 as amended through 1965.

## OPINION

Having conceded the only issue with regard to the notice of deficiency, petitioner claims entitlement to a refund of income tax paid for 1965. The basis for petitioner's claim is that the provisions of the Internal Revenue Code providing a rate of tax applicable to petitioner, who is a single person, higher than the rate applicable to joint returns of married persons are unconstitutional and in violation of the 5th, 9th, 14th, and 16th amendments and article 1, section 2, clause 3, and article 1, section 9, clause 4 of the United States Constitution.[1]

---

[1] The relevant sections of the Internal Revenue Code, as amended through Public Law 88–272, Feb. 26, 1964, were as follows:

Sec. 1(a)(2). * * * In the case of a taxable year beginning after December 31, 1964, there is hereby imposed on the taxable income of every individual (other than a head of a household to whom subsection (b) applies) a tax determined in accordance with the following table:

| * | * | * | * | * | * | * |
|---|---|---|---|---|---|---|
| Over $14,000 but not over $16,000_____ | | | | | | $3,550 plus 39% of excess over $14,000 |
| * | * | * | * | * | * | * |
| Over $26,000 but not over $32,000_____ | | | | | | $9,030 plus 53% of excess over $26,000 |
| * | * | * | * | * | * | * |

Sec. 2(a). RATE OF TAX. In the case of a joint return of a husband and wife under section 6013, the tax imposed by section 1 shall be twice the tax which would be imposed if the taxable income were cut in half * * *

After giving effect to the increase in petitioner's income asserted in respondent's notice of deficiency, the Federal income tax applicable to petitioner's 1965 income under the provisions of sec. 1(a)(2) (shown above) is $10,726.34. If the "income splitting" provision of sec. 2(a) (shown above) were applicable to the same income, the tax would be $7,568.26; the difference between the two amounts is $3,158.08, which is a 41.7-percent increase from $7,568.26, or a 29.4-percent reduction from $10,726.34, depending on the reader's perspective.

Petitioner's argument with respect to the 9th and 16th amendments and with respect to the first article of the Constitution is apparently that the amount of tax paid by her in excess of that which would be payable if joint return rates were applied to her income is not an income tax, and also is not a tax which is apportioned among the States. This argument, predicated on the assertion that the "excess" is a penalty for remaining single, and not an income tax, is without merit. No evidence has been submitted showing the intent of Congress was to regulate or restrict or penalize persons who are not married.

Although the 14th amendment is generally applicable to States rather than to the Federal government, the 14th amendment concept of equal protection has been held in certain nontax situations to be applicable to the United States through the 5th amendment. *Bolling* v. *Sharpe*, 347 U.S. 497 (1954); *Shapiro* v. *Thompson*, 394 U.S. 618, 642 (1969). Without specifically stating that equal protection was an essential part of the 5th amendment in cases involving classifications within the Internal Revenue Code, the Supreme Court has set forth the standard for judicial review of classifications within the Internal Revenue Code in *United States* v. *Maryland Savings-Share Ins. Corp.*, 400 U.S. 4 (1970), a case in which the equal protection argument was made by the taxpayer. In that case the Court stated:

Normally, a legislative classification will not be set aside if any state of facts rationally justifying it is demonstrated to or perceived by the courts. *McDonald* v. *Board of Election Comm'rs*, 394 U.S. 802, 809 (1969), *McGowan* v. *Maryland*, 366 U.S. 420, 426 (1961), *Standard Oil Co.* v. *City of Marysville*, 279 U.S. 582, 586–587 (1929). * * *

Petitioner's central argument thus hangs on the issue of whether this Court "perceives" a rational basis for the distinction drawn between married and single persons for purposes of the applicable rates of taxation. We do perceive such a basis.

This distinction was drawn for the first time by section 301 of the Revenue Act of 1948, 62 Stat. 114, and has remained a part of the Code since then. Legislative history discloses congressional intent in the enactment of the provision to be the geographic equalization of tax treatment of taxpayers.[2] This equalizing provision was meant to forestall a substantial and immediate trend by State governments adopting community property laws. The anticipated community property laws were expected by Congress to produce revenue losses equivalent in magnitude to the revenue loss caused by the enactment of the bill[3] and at the same time cause serious disruption in State and Federal government.[4] Congress felt it could not directly attack the effect

[2] H. Rept. No. 1274, 80th Cong., 2d Sess. (1948), 1948–1 C.B. 241, 260.
[3] Ibid. at 261.
[4] Ibid. at 259.

of community property laws in light of the decision of *Poe* v. *Seaborn*, 282 U.S. 101 (1930).[5] The effect of the 1948 Act was to provide equality of treatment to persons who were married whether or not living in a community property State.

Petitioner argues that issue is not taken with the wisdom of the enactment of the split-income device to frustrate the anticipated State community property laws, but rather issue is taken with the denial of the benefit of the split-income device to single persons. We perceive two justifications to what was done by Congress in this respect. First, it is reasonable for Congress to attempt to achieve geographic equality. The means chosen to meet that end was reasonable in spite of the unequal treatment of single people since there were no viable alternative methods available to Congress to leave *all* taxpayers equal. Inequality remained if the income-splitting device were extended to *all* individual returns of both married and single persons, since then married persons in community property States filing individual returns would still be better off than persons married or single outside of community property States; nor would equality be achieved if the income-splitting device were extended only to single persons and married persons filing joint returns, because then a single person would pay a much lower tax than the tax paid by a married person who filed a separate return. Furthermore a single person would also pay a tax lower than the effective tax on the same income of a married person whose spouse also had significant income (both of whose incomes were included on a joint return).

More importantly, however, Congress was within the bounds of its constitutional role since it is conceivable Congress believed that married persons generally have greater financial burdens than single persons.[6] The recognition of such greater burdens is certainly consonant with taxation based on the ability to pay, which has long been an important objective of the income tax scheme. The degree of recognition given by Congress to the problem of greater financial burdens on the part of the married taxpayers (see fn. 1 *supra*) was also within the discretion of Congress since it does not appear arbitrary or unreasonable. Furthermore, the fact that the income-splitting device grants the greatest amount of tax reduction to those earning high incomes simply reflects the graduated rate structure of the Internal Revenue Code. This factor in no way negates the idea that the provision was an acknowledgment of the greater financial burdens of married persons since in any given income category the married

---

[5] Ibid. at 257.

[6] It need not be demonstrated that Congress actually considered such a state of facts as long as the facts are perceptible to the Court. See *United States* v. *Maryland Savings-Share Ins. Corp.*, 400 U.S. 4 (1970).

person filing jointly will pay less tax than a single person having the same income.[7]

Petitioner's faith in *Hoeper* v. *Tax Commission*, 284 U.S. 206 (1931), and similar cases is misplaced. In *Hoeper* the Court was dealing with a Wisconsin income tax statute which added a wife's earnings to her husband's taxable income. The Court stated at page 217: "It can hardly be claimed that a mere difference in social relations so alters the taxable status of one receiving income as to justify a different measure for the tax." The distinction between *Hoeper* and the present case is that in *Hoeper* the State was attempting to tax to the husband earnings which were not his, whereas in this case Congress is applying a different rate of tax to earnings conceded to be petitioner's. It is fully within the power of Congress to enact provisions reducing or modifying the effect of the graduated rates, subject to the restriction discussed above; that is, if the change in the rate structure is not equal as between classes of taxpayers, there must be a rational basis for the distinction. In this case the geographic equalization of taxpayers as between community and noncommunity States and the recognition of the greater financial burdens of married persons provide such rational basis.

*Decision will be entered for the respondent.*

---

[7] It is worth noting that as the married person's spouse has an increasing amount of separate income, the "tax reduction" due to "income splitting" diminishes, reaching zero when the two incomes are equal.