JOHN BAKLER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Bakler v. Commissioner
Docket No. 4265-71.
United States Tax Court
T.C. Memo 1974-134; 1974 Tax Ct. Memo LEXIS 187; 33 T.C.M. (CCH) 607; T.C.M. (RIA) 74134; May 23, 1974, Filed John Bakler, pro se. Willard W. Timm, for the respondent. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The Commissioner determined a deficiency in petitioner's Federal income tax for the taxable year 1967 in the amount of $1,066.22. The questions presented for decision are: (1) whether petitioner is entitled to dependency deductions for his parents, Hungarian citizens who did not reside in the United States during the taxable year; and (2) whether petitioner is entitled to a casualty loss in an amount greater than allowed by the Commissioner by reason of fire and theft losses to his apartment house. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts together with the exhibits attached thereto are incorporated herein by reference. Petitioner John Bakler's residence at the time the petition in this case was filed was *189 Culver City, California. His income tax return for the taxable year 1967 was filed with the district director of internal revenue at Brooklyn, New York. During the entire taxable year involved, petitioner's parents were citizens of Hungary and resided in that country. Petitioner contributed more than one-half of their total support during 1967 and claimed them as dependents on his 1967 income tax return. The deduction was disallowed by the Commissioner on the grounds that petitioner did not show that they qualified as dependents under section 151 of the Code. [1]
In 1965, petitioner purchased a three-story brick apartment building from a member of his family for $7,000. The building contained six apartments which were occupied at the time of purchase. Petitioner gave the tenants notice to vacate so that he could remodel and modernize the building. He then commenced to remodel the building, performing the work himself. In the process of remodeling, petitioner installed new copper plumbing. Petitioner did not reside in the apartment building. Petitioner had completed the remodeling except for *190 a bedroom on the third floor when a fire occurred in the vacant building on May 29, 1966. The fire started in a first floor apartment and extended throughout the interior stairway. The stairway was completely destroyed and the middle of the roof was burned. Two fire department ladder companies and one engine company assisted in extinguishing the fire which took an hour and 35 minutes to accomplish. The structural damage to the building was termed by the fire department as "light." Petitioner had obtained casualty insurance on the building in the total amount of $20,000 from the Insurance Co. of North America and the Royal Insurance Co. A claims adjuster determined that petitioner's actual loss from the fire was $13,000. He also determined that the actual cash value of the building at the time of the fire was $37,600. Because petitioner did not have the requisite 80 percent of the replacement cost in insurance protection, he received only $8,643.61 in settlement of his claim from the insurance companies. Petitioner was required to pay $864.36 to the claims adjuster for adjustment of the claim. The net amount received by petitioner as reimbursement for the loss was thus $7,779.25. *191 The fair market value of the apartment building after the fire was $17,600. Petitioner had retained the receipts in the apartment building showing the amount which he had spent in remodeling the building, but these receipts were destroyed in the fire. Petitioner spent $15,000 to improve the building. Petitioner boarded up the apartment building after the fire at a cost of $200. Within a few days after the fire, persons began to enter the building and remove property from the building. Eventually, the thieves completely stripped the interior of the building by removing copper plumbing, bathroom fixtures, kitchen appliances and aluminum window frames. On one occasion, petitioner apprehended burglars dismantling the plumbing. He called the police and two persons were arrested and later convicted in Kings County Court, Brooklyn. Petitioner never recovered any of the stolen property. In the taxable year 1966, petitioner sold the apartment building and the underlying land to Deep Sea Realty Co. for $8,400 and the realty company demolished the building in the same year. On his income tax return for the taxable year 1967 petitioner claimed a deduction of $11,016 with the *192 following explanation: "FIRE LOSS OF MY HOUSE (DETAILS OF INQU. AT BROOKLYN TAX OFFICE)." Respondent disallowed the deduction claimed on the 1967 return and adjusted the returns for the taxable years 1963, 1964 and 1966 as follows to reflect the casualty loss allowed of $9,857 and a carryover and carryback of the net operating loss. 1966
Gross income per return:
$2667.89
less fire loss: (9857.00)
$ (7189.11)
less Itemized Non-Business deductions to the extent of Non-Bus. income: (295.59)
CARRYBACK LOSS TO 1963:
$ (7484.70)
1963
Gross income per return:
$ 6535.78
less 1966 Net Operating loss: (7484.70)
$ (948.92)
less Itemized Deductions: (with adjustment to Medical Exp. due to change in A.G.I.) (1150.30)
$ (2099.22)
1964
Gross income per return:
$ 6864.88
less Carryover from 1963: (2099.22)
(Loss fully absorbed)
4765.66
less Itemized Deductions: (1705.90)
3059.76
less exemption: (600.00)
Corrected Taxable income for 1964:
$ 2459.76
The loss of $9,857 allowed by the Commissioner is as follows: Fire loss
$ 13,000.00
Less net recovery 7,779.25
$ 5,220.75
Theft loss 4,636.25
Loss allowed $ 9,857.00
*193 OPINION The first issue presented for decision is whether petitioner is entitled to claim dependency deductions for his parents, who were citizens and residents of Hungary. The sole ground for disallowance is that the parents are not citizens or residents of the United States. Petitioner does not dispute the proposition that his parents are not "dependents" within the language of section 152(b) (3) of the Code. That section provides in part: The term "dependent" does not include any individual who is not a citizen of the United States unless such individual is a resident of the United States, of a country contiguous to the United States, of the Canal Zone, or of the Republic of Panama. * * * Petitioner argues that the provision quoted above violates his rights under the equal protection provision of the 14th amendment and is, therefore, unconstitutional. He urges that it discriminates against naturalized citizens of the United States who provide support for parents who have not immigrated to this country and that it relegates petitioner to a "third class citizenship." We have held that section 152(b) (3) does not violate the fifth amendment to the Constitution. David B. Barr, 51 T.C. 693 (1969). *194 In that case we denied a deduction for a dependent stepson who was neither a citizen nor resident of the United States. We held that the power of Congress to levy taxes is broad and if a classification of taxpayers is reasonable that the fifth amendment was not violated. Barclay & Co. v. Edwards, 267 U.S. 442, 450 (1924). We held in Vivien Kellems, 58 T.C. 556 (1972), affd. 474 F.2d 1399 (C.A. 2, 1973), that a classification of taxpayers will not be set aside as violating the 14th amendment if there exists a rational basis justifying such classification and we based our opinion on United States v. Maryland Savings-Share Ins. Corp., 400 U.S. 4 (1970), wherein the Sureme Court stated at page 6: Normally, a legislative classification will not be set aside if any state of facts rationally justifying it is demonstrated to or perceived by the courts. McDonald v. Board of Election Comm'rs, 394 U.S. 802, 809 (1969); McGowan v. Maryland, 366 U.S. 420, 426 (1961); Standard Oil Co. v. City of Marysville, 279 U.S. 582, 586-587 (1929). * * * The classification with which we are concerned is that *195 of petitioner as a taxpayer not the classification of the dependents. We conclude that the denial of petitioner's parents as dependents is not a classification of petitioner. Dependents who qualify a taxpayer for dependency deductions include children; stepchildren and other descendants; parents and other ancestors; and brothers, sisters and their spouses. It is possible that a naturalized citizen may be more likely to have parents who do not reside in the United States than would a citizen born in the United States. But parents represent only one class of relative that may qualify as a dependent. Citizens of the United States who are citizens by reason of birth may be more likely to have dependents of another relationship who reside outside the United States. We do not see that the likelihood in such instances constitutes a classification of taxpayers. Even if we were to hold that such likelihood represented a classification we would hold it constitutional because such classification is reasonable. The requirement of citizenship or residency required by section 152(b) (3) was added to the Internal Revenue Code in 1944. Another requirement for eligibility is that the *196 taxpayer must furnish more than one-half of the support of the dependent. The administrative burden of ascertaining total support would be greatly increased and complicated if the restrictions of residency or citizenship were not present. We accordingly hold that if a classification exists, it is reasonable. The remaining issue is the amount of a deduction for casualty losses from fire and thefts occurring in petitioner's apartment building in 1966. Petitioner computes his casualty loss deduction at trial as follows: Value before fire and theft
$ 37,600
Less insurance proceeds 8,643
28,957
Plus: Adjuster's fee
$ 864
Cost of boarding up building 200
1,064
Net deduction $ 30,021
Petitioner claimed a deduction on his return for 1967 in the amount of $11,016. The Commissioner allowed a net deduction by reason of the fire and theft casualties in the amount of $9,857 in the taxable year 1966, the year of the loss. The amount of a deductible casualty loss is determined by section 1.165-7(b) (1), Income Tax Regs., which provides as follows: (b) Amount deductible. (1) General rule. In the case of any casualty loss whether or not incurred *197 in a trade or business or in any transaction entered into for profit, the amount of loss to be taken into account for purposes of section 165(a) shall be the lesser of either - (i) The amount which is equal to the fair market value of the property immediately before the casualty reduced by the fair market value of the property immediately after the casualty; or (ii) The amount of the adjusted basis prescribed in section 1.1011-1 for determining the loss from the sale or other disposition of the property involved. However, if property used in a trade or business or held for the production of income is totally destroyed by casualty, and if the fair market value of such property immediately before the casualty is less than the adjusted basis of such property, the amount of the adjusted basis of such property shall be treated as the amount of the loss for the purposes of section 165(a). Based upon the insurance adjuster's report, the "actual cash value" of the apartment building was $37,600 before the fire and we conclude that this was equivalent to the fair market value. See I. Hal Millsap, Jr., 46 T.C. 751 (1966), affd. 387 F.2d 420 (C.A. 8, 1968). *198 The petitioner, however, provided little evidence as to the fair market value of the building after the fire. Contrary to petitioner's assertions that the building possessed no market value subsequent to the casualty, the adjuster determined that the actual loss was only $13,000, which is a strong indication that the building did possess some value in its damaged condition. Petitioner sold the property for $8,400 in 1966. Although the fire department reported the damage to the building as "light" in nature, it, nevertheless, required three fire companies to bring it under control and the fire reached the roof of the three-story structure after starting on the first floor before being extinguished. Based on all the evidence we conclude that the fair market value of the apartment building after the fire was no more than $17,600. Applying section 1.165-7(b) (1) (i), Income Tax Regs., to the fire loss the following results: Fair market value before the fire
$ 37,600.00
Fair market value after the fire 17,600.00
Loss
$ 20,000.00
Less net insurance proceeds after payment for claims adjuster 7,779.25 $ 12,220.75
Section 1.165-7(b) (1), Income Tax *199 Regs., provides that the deduction shall be allowable for the lesser of the amount computed in accordance with section 1.165-7(b) (1) (i), Income Tax Regs., (which we show above) and section 1.165-7(b) (1) (ii), Income Tax Regs., (adjusted basis of the property). The adjusted basis of the property consists of petitioner's original cost plus permanent improvements which he made, less depreciation allowed or allowable. Sec. 1011, Internal Revenue Code. Petitioner acquired the building in 1965 and the fire occurred on May 29, 1966. It is doubtful that depreciation would materially affect petitioner's adjusted basis. The facts surrounding petitioner's acquisition of the building are not clear and petitioner testified that he purchased the building from a member of his family. The acquisition may have been some sort of a bargain purchase; nevertheless, based upon the entire record we find that petitioner's original cost was $7,000. There remains, therefore, a determination of the cost of improvements made by petitioner. He testified that he expended $25,000 for improvements which included copper plumbing. He testified that the receipts for such expenditures *200 were destroyed in the fire although he did not reside in the building in which the fire occurred. Petitioner had only $20,000 insurance coverage on the building. The fair market value of the building, as improved by petitioner, prior to the fire was $37,600. Based upon all the evidence we believe that petitioner did not spend more than $15,000 to improve the building. Petitioner's adjusted basis in the property at the time the fire occurred was, therefore, $22,000. When reduced by the net insurance proceeds after payment for the claims adjuster ($7,779.25), the deduction for the fire loss under section 1.165-7(b) (1) (ii), Income Tax Regs., is $14,220.75. The lesser of the two amounts determined under sections 1.165-7(b) (1) (i) and 1.165-7(b) (1) (ii) is the amount determined under the former, or $12,220.75. We, therefore, hold that petitioner is entitled to deduct as a casualty loss from fire the sum of $12,220.75 for the taxable year 1966. This will result in a recomputation of the carryback loss to 1963 and 1964 and necessitate a recomputation of tax of the year before us, 1967. The Commissioner allowed a deduction of $4,636.25 for the theft of property from petitioner's *201 apartment building. The theft loss occurred in more than one incident shortly after the fire. Some individuals were apprehended attempting to disconnect the plumbing. Petitioner's testimony as to specific items stolen was vague. To the extent that fixtures attached to the building such as plumbing pipes, plumbing fixtures, and window frames were removed, their loss would be reflected in the fair market value of the building because they constitute part of the building. The principles which we applied to the fire loss from section 1.165-7(b) (1), Income Tax Regs., apply to the theft loss. Because the theft loss occurred shortly after the fire, it is difficult to see how the fair market value of the building declined more than the $4,636.25 allowed by the Commissioner as a result of the theft of fixtures. There is no evidence in the record to support the theft of items which were not fixtures except the vague unsupported statements of petitioner. We have found the adjusted basis prior to the fire loss to be $22,000. This must be reduced by the allowable loss from the fire ($12,220.75) to determine the adjusted basis at the time of the theft loss. Sec. 1016(a) (1), Internal Revenue Code *202 . Such amount is $9,779.25. The amount allowable by reason of the decrease in fair market value is less; therefore, petitioner's deduction for the theft loss is limited to $4,636.25. Sec. 1.165-7(b) (1), Income Tax Regs.
Decision will be entered under Rule 155. Footnotes
1. All Code references are to the Internal Revenue Code of 1954, as amended. ↩