EVELYN H. DAVIDSON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
Davidson v. Commissioner
Docket No. 7096-74
United States Tax Court
T.C. Memo 1977-232; 1977 Tax Ct. Memo LEXIS 208; 36 T.C.M. (CCH) 962; T.C.M. (RIA) 770232; July 25, 1977, Filed Evelyn H. Davidson, pro se. Peter Matwiczyk, for the respondent. WILBUR
MEMORANDUM FINDINGS OF FACT AND OPINION WILBUR, Judge: Respondent determined a deficiency in petitioner's Federal income tax for the taxable year 1972 in the amount of $81. The two issues presented for our determination are: (1) Whether petitioner is entitled to compute her 1972 Federal income tax using the head of the household rates, and (2) whether the dual rate structure for married and unmarried taxpayers is constitutional. All of the facts have been stipulated and are found accordingly. Petitioner, *209 Evelyn H. Davidson, resided in Bayside, New York, at the time the petition was filed in this case. Petitioner filed her 1972 Federal income tax return with the Internal Revenue Service Center in Andover, Massachusetts. During 1972, petitioner lived alone with at least 15 dogs and cats. She computed her Federal income tax for that year using the head of household rates. Respondent determined that petitioner was not entitled to use the head of household rates but was required to use the rates for unmarried individuals, and issued a deficiency notice based upon that conclusion. In order to qualify for the use of the head of household rates, section 2(b) [1] requires, inter alia, that the individual maintain a household which qualifies as the principal abode for the taxable year of someone who either falls within a designated class of relatives or who is a dependent for whom the taxpayer is entitled to a deduction under section 152. Petitioner was not entitled to use the head of household rates for 1972 since she lived alone, and neither her dogs nor her cats can qualify as "dependents" under section 152. Schoen v. Commissioner,T.C. Memo. 1975-167. *210 Petitioner contends that the dual rate structure for married and unmarried taxpayers constitutes a penalty imposed upon her for not marrying in violation of her rights under the Fifth, Ninth, Fourteenth and Sixteenth Amendments and Article One of the Constitution. She cites in support of her argument statements made by several wellknown individuals criticizing the present rate structure. However, every court which has been confronted with this issue has found the rate structure constitutional. Shinder v. Commissioner,395 F. 2d 222 (9th Cir. 1968), affg. a Memorandum Opinion of this Court; Faraco v. Commissioner,261 F. 2d 387 (4th Cir. 1958), affg. 29 T.C. 674 (1958), cert. denied 359 U.S. 925 (1959); Kellems v. Commissioner,58 T.C. 556 (1972), affd. per curiam 474 F. 2d 1399 (2d Cir. 1973), cert. denied 414 U.S. 831 (1973); Jansen v. United States,     F. Supp.     (D. Minn. 1977); Johnson v. United States,422 F. Supp. 958 (N.D. Ind. 1976). As some of petitioner's authorities imply, the "dual rate" structure may have been born in confusion, reared *211 in error, and multiplied in inequity (the "dual" structure is now a quadruple structure), but the Courts have uniformly held the system has a sufficiently rational basis to survive constitutional challenge. [2]
*212 Decision will be entered for the respondent. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the period in issue, unless otherwise stated.↩
2. "Until 1948 there was a marked discrimination within the upper brackets. Married couples in the community property states paid substantially less than those in the common law states. In 1947 the Special Study Tax Committee described the distinction as 'perhaps the most important inequity now in need of correction.' A year later this vexing problem was happily resolved. Those who were aggrieved became entitled to pay equally less." Eisenstein, The Ideologies of Taxation, 161-62 (Ronald Press 1961). Subsequent history is a classic example of Eisenstein's later comment that "Since equity is the fair distribution of dispensations," Congress sometimes resolves the differences between contending groups by dispassionately declaring "Everybody has won and all must have prizes." Id. at 177. Subsequent distributions have resulted in four rate structures, leaving both married and unmarried unhappy, encouraging sham divorces, and enticing individuals with approximately the same income to live in sin. Changes based on the present assumptions involve something of a zero sum game, since the circumstances of the principal contending forces cannot be improved without disturbing the existing balance of benefits. For an excellent statement revealing the complexity of the problems see remarks of Hon. Edwin S. Cohen, Hearings on the Tax Treatment of Single Persons and Married Persons before the Comm. on Ways and Means, H.R. 92nd Cong., 2d Sess. 73, 78 (1972). See also Bittker, Federal Income Taxation and the Family, 27 Stan. L. Rev. 1389, 1416-1443↩ (1974). But if we are to adopt a different set of assumptions by returning to step one, the step will have to be taken by Congress. Petitioner must address her arguments to that forum.