ROBERT E. NEELY AND JEAN M. NEELY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
Neely v. Commissioner
Docket No. 362-77.
United States Tax Court
T.C. Memo 1978-18; 1978 Tax Ct. Memo LEXIS 495; 37 T.C.M. (CCH) 128; T.C.M. (RIA) 780018; January 18, 1978, Filed Robert E. Neely, pro se. Wesley J. Lynes, for the respondent. HALL MEMORANDUM FINDINGS OF FACT AND OPINION HALL, Judge: Respondent determined a deficiency of $1,512.12 in petitioners' 1974 income tax. Because of concessions by the parties, the sole issue remaining for decision is whether petitioner was self-employed within the meaning of section 401(c)[1] in 1974. FINDINGS OF FACT Some of the facts have been stipulated by the parties and are found accordingly. At the time they filed their petition, *497 Robert E. and Jean M. Neely resided in Nashville, Tennessee. Jean M. Neely is a party only by virtue of having filed a joint return for 1974 with her husband. When we hereafter refer to petitioner, we will be referring to Robert E. Neely. In 1974 petitioner worked as a used car salesman (one of six) at Star Chrysler-Plymouth ("Star") in Nashville. Compensation totalling $27,293.73 was paid to him in that year by Star, which withheld from his pay Federal income tax of $5,096.39 and social security tax of $772.20. Star did not provide a retirement plan for its used car salesmen during 1974. Petitioner sold used cars for Star on a commission basis; he received no salary or vacation pay. For every automobile that he sold, he was paid a commission of 30 percent of the profit on the sale. However, he also had to pay Star $115 (deducted from his commission) for each car sold. This $115 was denominated as (1) a lot fee of $60, (2) cleanup cost (on each automobile) of $30, and (3) repairs cost of $25. He did not have to pay any fee if he did not sell any cars. In general, Mr. Sherrod, Star's used car manager, controlled the manner in which Star's used car salesmen conducted *498 their activities. Each salesman was given free rein as to his "sales pitch"--but not as to the price for which he sold a car. Prices were set by Mr. Sherrod; he also had to approve any reduction in the advertised price which petitioner offered to a prospective customer.
Petitioner was expected to be at the used car lot at certain hours each day, although he was allowed to work more hours if he chose. Except with Mr. Sherrod's approval, he could not send a substitute salesman (other than one of the other regular salesmen at Star) to take his place during his regular hours. Mr. Sherrod considered petitioner to be an employee of Star. Petitioner did not have any capital investment in Star, nor was he required to put up any capital before beginning work there. Other than his commission, he received no profit from the cars he sold. He had no written contract with Star, and could be fired (or quit) at any time. In 1974 petitioner established a Keogh (H.R. 10) retirement plan. On his 1974 tax return he claimed an adjustment to his income of $3,000 for his contribution of that amount to this plan. In his statutory notice respondent disallowed this claim in its entirety on the *499 grounds that petitioner was not self-employed in 1974. OPINION The first issue is whether petitioner is entitled to adjust his gross income by the amount of his contribution to his Keogh (H.R. 10) retirement plan. Specifically, we must determine whether petitioner was self-employed within the meaning of section 401(c) in 1974. If, as petitioner asserts, he was self-employed, then he is entitled to a deduction for this contribution. On the other hand if, as respondent asserts, petitioner was a common-law employee of Star in 1974, then his contribution to his Keogh (H.R. 10) retirement plan is not deductible. Generally, during 1974, a qualified plan could be instituted by an employer for himself and for his employees under the provisions of section 401, etseq. A self-employed individual, for the purposes of qualifying for his own plan, is defined as an employer under section 401(c)(4). It is respondent's position that petitioner is not self-employed but is an employee in the common-law sense. A common-law employee could not adopt any type of qualified retirement plan on his own in 1974. [2]
*500 In the instant case, petitioner had only one source of income, the commissions he earned from selling automobiles on the Star used car lot. The question here, therefore, is whether he was an employee or self-employed. The determination of whether an individual is a common-law employee for section 401(c) purposes is governed by the usual common-law rules applicable in defining the employer-employee relationship. Packard v. Commissioner,63 T.C. 621 (1975). The issue of whether an employer-employee relationship exists is generally one of fact. Air Terminal Cab, Inc. v. United States,478 F. 2d 575 (8th Cir. 1973); Azad v. United States,388 F. 2d 74 (8th Cir. 1968); Alsco Storm Windows, Inc. v. United States,311 F. 2d 341 (9th Cir. 1962). The fundamental test employed in determining whether an employer-employee relationship exists is whether the purported employer has the right to control the activities of the individuals whose status is in issue, not only as to result, but also as to the means and methods to be used *501 for accomplishing the result. Azad v. United States,supra;Alsco Storm Windows, Inc. v. United States,supra.
Treas. Reg.§ 31.3401(c)-1(b), defining "employee" for withholding purposes, contains this same general common-law definition: Generally the relationship of employer and employee exists when the person for whom services are performed has the right to control and direct the individual who performs the services, not only as to the result to be accomplished by the work but also as to the details and means by which that result is accomplished. That is, an employee is subject to the will and control of the employer not only as to what shall be done but how it shall be done. In this connection, it is not necessary that the employer actually direct or control the manner in which the services are performed; it is sufficient if he has the right to do so. The right to discharge is also an important factor indicating that the person possessing that right is an employer. Other factors characteristic of an *502 employer, but not necessarily present in every case, are the furnishing of tools and the furnishing of a place to work to the individual who performs the services. In general, if an individual is subject to the control or direction of another merely as to the result to be accomplished by the work and not as to the means and methods for accomplishing the result, he is not an employee. A similar definition of "employee" is found in Treas. Reg. § 31.3121(d)-1(c) and Treas. Reg. § 31.3306(i)-1 for purposes of employment taxes. In determining who is an employee under specific circumstances, it is the total factual situation that controls and due consideration must be given to all relevant factors. Bartels v. Birmingham,332 U.S. 126 (1947); Simpson v. Commissioner,64 T.C. 974, 984-985 (1975). In applying the common-law tests to determine the employer-employee relationship, the Court, in Simpson v. Commissioner,supra, inquired into the following relevant factors: *503 (1) The degree of control exercised by the principal over the details of the work; (2) Which party invests in the facilities used in the work; (3) The opportunity of the individual for profit or loss; (4) Whether or not the principal has the right to discharge the individual; (5) Whether the work is part of the principal's regular business; (6) The permanency of the relationship; and (7) The relationship the parties believe they are creating. In applying these factors in the instant case, the evidence establishes that petitioner was an employee and not self-employed. With respect to the degree of control exercised by the principal over petitioner's work, Mr. Sherrod, the used car manager for Star, testified that he controlled the activities of all of the salesmen.He also approved or disapproved of each sale if it was below the advertised price. Further, he testified that all his salesmen were required to be on the used car lot during specified hours. He did testify, however, that if they so desired, they could increase their time on the lot. Mr. Sherrod testified that petitioner could not employ substitute salesmen (other than those approved by Star) to take petitioner's *504 place on the used car lot. With respect to which party invests in the work facilities, petitioner performed almost all of his work on the Star lot. Petitioner testified that he sometimes works out of his home in order to sell cars, but the cars he sold during those times were Star's. The lot and cars were owned by Star and petitioner had no capital investment in either. With respect to the opportunity of the individual for profit or loss, petitioner was a commissioned salesman and thus earned a living not by the success of Star but through his own success in selling their automobiles.He was not paid a salary, which would have been indicative of an employer-employee relationship. This factor alone, however, is not sufficient to conclude that he was self-employed. With respect to whether the principal has the right to discharge petitioner, Mr. Sherrod testified that he and petitioner have a verbal contract at will. Petitioner can quit and Mr. Sherrod can fire him. Of course, independent contractors, too, can be terminated at will, so this factor can be given little or no weight. With respect to whether the work is part of the principal's regular business, petitioner's *505 work was part of Star's regular business. With respect to the permanency of the relationship, petitioner has been working for Star for several years. With respect to the relationship the parties believe they have, Mr. Sherrod testified that he considered the petitioner to be an employee of Star. Further, petitioner was paid 30 percent of the profit of each car sold, less $115 for overhead. In addition, he was required to pay his own business expenses. With respect to those business expenses, petitioner deducted them as employee business expenses. Clearly, he considered himself to be an employee. Further, Star withheld taxes and paid social security taxes on his wages as if he were an employee. From the above, it can be seen that of the seven factors considered in Simpson v. Commissioner,64 T.C. 974 (1975), six point to petitioner being an employee. We hold that petitioner was a common-law employee of Star and therefore not entitled to adopt a qualified Keogh (H.R. 10) pension plan. Therefore he also was not entitled to a deduction for contributions to such a plan. Petitioner also asserts that section 401 is unconstitutional since it would allow *506 him to deduct these contributions if he were self-employed but not if he is a common-law employee. Since Star did not have a retirement plan for its used car salesmen, petitioner contends that he is being denied deductions available to other workers. Although we sympathize with petitioner's plight, we cannot accept his constitutional argument. Allowance of a deduction from gross income is not a matter of right or equity but depends upon legislative grace. Deputy v. du Pont,308 U.S. 488, 493 (1940); New Colonial Ice Co., Inc. v. Helvering,292 U.S. 435, 440 (1934); Helvering v. Ind. Life Ins. Co.,292 U.S. 371, 381 (1934). However, the due process clause contained in the Fifth Amendment requires that any limitation on the grant of a deduction or of a preference be founded upon a rational basis. United States v. Maryland Savings-Share Ins. Corp.,400 U.S. 4, 6 (1970); Brushaber v. Union Pac. R.R.,240 U.S. 1, 24-25 (1916); Kellems v. Commissioner,58 T.C. 556, 558 (1972), affd. *507 474 F. 2d 1399 (2d Cir. 1973), cert. denied 414 U.S. 831 (1973).Where the limitations are implemented by means of a classification, that classification will not be set aside if any set of facts rationally justifying it is demonstrated or perceived by the courts. Kellems v. Commissioner,supra.
We can readily determine a rational basis for allowing only self-employed individuals as a class to establish retirement plans by themselves. In general, Congress attempted to induce employers to establish retirement plans for their employees, and this inducement was provided by the deduction offered to the employer and exclusion from income for the employee for contributions made to a trust as part of a qualified plan. [3] Congress desired to allow the self-employed to establish qualified retirement plans for their own retirement. H. Rept. 378, 87th Cong., 1st Sess. (1962), 1962-3 C.B. 261, 262-64. However, since the self-employed individuals did not have "employers," Congress provided in the Self-employed Individual Tax Retirement Act of 1962 that the self-employed were their own "employers," and therefore also entitled *508 to the deductions provided in section 404 if they establish a qualified retirement plan. Classifying the self-employed as their own employers allowed Congress to extend to the self-employed the tax incentives for establishing retirement systems which were previously available to all other types of "employers." Yet the self-employed are as much employers as employees, and these tax benefits could not be made available to them unless they were so classified. In this act, Congress merely extended to another group of "employers" the benefits already available to other types of employers. We conclude that since the self-employed are their own "employers" a rational basis for allowing them to establish their own qualified retirement plans clearly does exist. [4] Accordingly, we reject petitioner's constitutional contention. *509 Due to concessions, Decision will be entered under Rule 155. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as in effect in the year in issue.↩
2. Beginning in 1975 a common-law employee could establish an individual retirement arrangement under certain circumstances. See sections 219, 408 and 409.↩
3. For common-law employees, retirement plans could be provided by their employer, presumably including Star. Unfortunately for petitioner, Star chose not to do so. ↩
4. We have previously noted that, effective for the taxable years beginning after December 31, 1974, Congress has provided individuals in petitioner's situation an alternative, namely, they can establish individual retirement arrangements.↩