ARTHUR J. JOHNSON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Johnson v. Commissioner
Docket No. 273-78.
United States Tax Court
T.C. Memo 1980-9; 1980 Tax Ct. Memo LEXIS 576; 39 T.C.M. (CCH) 868; T.C.M. (RIA) 80009; January 15, 1980, Filed Arthur J. Johnson, pro se. William F. Halley, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: This case was assigned to and heard by Special Trial Judge Francis J. Cantrel pursuant to section 7456(c) of the Internal Revenue Code[1] and General Order No. 6 of this Court, 69 T.C. XV. [2] The Court agrees with and adopts his opinion which is set forth below. *579 OPINION OF THE SPECIAL TRIAL JUDGE CANTREL, Special Trial Judge: Respondent determined a deficiency in petitioner's Federal income tax for 1975 in the amount of $741.38. The issues for determination are (1) whether petitioner is entitled to a deduction for claimed charitable contributions under section 170; (2) whether petitioner is qualified to file as head of household under section 2(b); and (3) whether petitioner is entitled to a deduction for mortgage interest and real estate taxes paid by his estranged spouse on real property solely owned by such spouse under sections 163 and 164. FINDINGS OF FACT Many of the facts were stipulated and are found accordingly. Petitioner's legal residence was 41 Hazelton Circle, Briarcliff Manor, New York, at the time he timely filed his 1975 individual Federal income tax return with the Internal Revenue Service. Petitioner and his former wife Barbara Johnson (Barbara) were legally separated pursuant to a written separation agreement dated October 19, 1974. They were thereafter divorced on March 30, 1976, pursuant to a Decree of Divorce issued by the Supreme Court of New York. Four children were born of their marriage: Ellen, *580 born July 3, 1954; Patricia, born September 25, 1955; Kathleen, born March 14, 1961; and Arthur, Jr., born January 25, 1962. Under the separation agreement custody of the children was given to Barbara. Sometime prior to 1975 petitioner and Barbara purchased a house at 41 Hazelton Circle, Briarcliff Manor, New York. Title to this house was placed solely in Barbara's name. At the time of purchasing the house, petitioner signed an agreement with the bank holding the mortgage; under the terms of this agreement he guaranteed the payment of principal and interest on the mortgage and the taxes on the house in the event that Barbara failed to make such payments. During 1975 Barbara resided at 41 Hazelton Circle with the two youngest children. Petitioner did not reside at 41 Hazelton Circle during 1975. Although he resided at several locations for short periods during 1975, he resided primarily at 1563 Lurting Avenue, Bronx, New York, in a single-family dwelling owned by his mother. During the entire year 1975 petitioner's eldest daughter Ellen attended Williams College in Massachusetts as a full-time student and maintained a room or apartment in Massachusetts. During the entire *581 year 1975 petitioner's daughter Patricia was a full-time student at Skidmore College, Saratoga, New York, and at the University of Virginia and maintained a room or apartment at those respective locations. [3] During 1975 Ellen and Patricia did not reside with petitioner in his residence for any portion of the year. Upon receiving their college degrees, neither daughter returned to reside with petitioner. During 1975 petitioner paid a total of $11,700, by check made payable to Barbara. He also gave Barbara money in excess of the amount ordered by the written separation agreement. Barbara used funds received from petitioner to pay the real estate taxes and mortgage payments on the residence at 41 Hazelton Circle directly to the bank in the following amounts: Real property taxes
$2,223.83
Mortgage interest
2,574.24 Petitioner was not obliged under the separation agreement to pay real estate taxes and mortgage payments on the residence at 41 Hazelton Circle and he did not make any such payments *582 to the bank during 1975. Petitioner attended services at St. Theresa's Roman Catholic Church every Sunday while visiting his children. Every week he gave a cash contribution to Sxt. Theresa's, and he deducted $520 for charitable contributions on his 1975 return. Respondent disallowed the claimed charitable contributions to St. Theresa in their entirety because petitioner produced no documentary evidence to substantiate them. Petitioner claimed all four of his children as dependency exemptions on his 1975 income tax return and claimed unmarried head of household filing status. Respondent allowed the dependency exemptions and disallowed the unmarried head of household filing status in his notice of deficiency. Petitioner claimed deductions on his 1975 return for interest expenses and state and local income taxes in the amounts of $910 and $3,074, respectively. Respondent allowed deductions for interest expenses and state and local income taxes in the amounts of $676.11 (a disallowance of $233.89) [4] and $3,470.43 (a credit of $396.43), respectively, in his notice of deficiency. Petitioner claims that he is entitled to an additional deduction not claimed on his 1975 return *583 for mortgage interest and real estate taxes paid on the residence at 41 Hazelton Circle. [5]
OPINION First, we address whether petitioner is entitled to a charitable contribution deduction under section 170. Petitioner regularly attended St. Theresa's each week during 1975 and made cash contributions which he claims totalled $520. However, he failed to substantiate his alleged contributions as he should have. See section 1.170A-1(a)(2), Income Tax Regs. Nevertheless, petitioner's testimony was candid, forthright, and credible, and we are convinced that he regularly attended and made cash contributions to St. Theresa's throughout 1975. [6] Using our best judgment and bearing heavily against petitioner *584 whose inexactitude is of his own making, we hold that petitioner is entitled to a $260 charitable contribution deduction. Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930); see Lamphere v. Commissioner,70 T.C. 391, 394 (1978); Mennuto v. Commissioner,56 T.C. 910, 923-924 (1971). Next, we consider the issue of petitioner's filing status. Section 1(b) imposes a tax in accordance with the rate schedule provided therein on the taxable income of every individual who is the head of a household (as defined in section 2(b)). Head of household is defined in section 2(b), which reads in its entirety, as follows: 2(b) Definition of Head of Household.-- (1) In General.--For purposes of this subtitle, an individual shall be considered a head of a household if, and only if, such individual is not married at the close of his taxable year, is not a surviving spouse (as defined in subsection (a)), and either-- (A) maintains as his home *585 a household which constitutes for such taxable year the principal place of abode, as a member of such household, of-- (i) a son, stepson, daughter, or stepdaughter of the taxpayer, or a descendant of a son or daughter of the taxpayer, but if such son, stepson, daughter, stepdaughter, or descendant is married at the close of the taxpayer's taxable year, only if the taxpayer is entitled to a deduction for the taxable year for such person under section 151, or (ii) any other person who is a dependent of the taxpayer, if the taxpayer is entitled to a deduction for the taxable year for such person under section 151, or (B) maintains a household which constitutes for such taxable year the principal place of abode of the father or mother of the taxpayer, if the taxpayer is entitled to a deduction for the taxable year for such father or mother under section 151. For purposes of this paragraph, an individual shall be considered as maintaining a household only if over half of the cost of maintaining the household during the taxable year is furnished by such individual. (Emphasis added.) Respondent contends that petitioner has not shown that he was not married at the end of 1975 and *586 further that petitioner did not maintain as his home a household which constituted the principal place of abode of any of his children. We agree. Section 2(b)(2)(B) provides that for the purposes of section 2(b) a person "who is legally separated from his spouse under a decree of divorce or of separate maintenance shall not be considered as married." It is well established that for the purposes of the tax laws, whether an individual is "married" is to be determined by the law of the statute of the marital domicile. Dunn v. Commissioner,70 T.C. 361 (1978); Deyoe v. Commissioner,66 T.C. 904, 913 (1976); Eccles v. Commissioner,19 T.C. 1049, 1051 (1953), affd. per curiam 208 F.2d 796 (4th Cir. 1953). Actual or voluntary separation pursuant to a written separation agreement does not satisfy the requirements of section 2(b); a decree of divorce or of separate maintenance is necessary. Kellner v. Commissioner,468 F.2d 627 (2d Cir. 1972), affirming per curiam a Memorandum Opinion of this Court. [7] *587 The parties have stipulated that petitioner and Barbara "were legally separated pursuant to a written separation agreement dated October 19, 1974." No explanation of this written separation agreement was presented at trial, nor was a copy of the agreement entered into evidence. We are therefore unable to determine with exactitude whether petitioner was separated under a decree of separate maintenance. (The record as a whole dictates that he was not.) Nevertheless, section 2(c) provides that an individual shall be considered unmarried for the purposes of section 2(b) if the individual is considered unmarried under section 143(b). Section 143(b) treats certain married individuals living apart, as unmarried, for the purposes of determining head of household status if they are married but separated and file separate returns, and the taxpayer maintains as his home a household, which constitutes for more than one-half of the taxable year, the principal place of abode of a dependent. [8]Manning v. Commissioner,72 T.C. 838 (1979). *588 It is undisputed that petitioner and Barbara were separated and filed separate returns and that petitioner was entitled to claim his children as dependents under the provisions of section 151(e). Thus, the crux of this issue depends on whether petitioner maintained as his home a household which constituted the principal place of abode of any of his children. *589 Section 1.2-2(c)(1), Income Tax Regs., which amplifies the statute provides in relevant part as follows: In order for a taxpayer to be considered as maintaining a household by reason of any individual described in paragraph (a)(1) or (b)(3) of this section, the household must actually constitute the home of the taxpayer for his taxable year. A physical change in the location of such home will not prevent a taxpayer from qualifying as a head of a household. Such home must also constitute the principal place of abode of at least one of the persons specified in such paragraph (a)(1) or (b)(3) of this section. It is not sufficient that the taxpayer maintain the household without being its occupant. The taxpayer and such other person must occupy the household for the entire taxable year of the taxpayer. * * * The taxpayer and such other person will be considered as occupying the household for such entire taxable year notwithstanding temporary absences from the household due to special circumstances. A nonpermanent failure to occupy the common abode *590 by reason of illness, education, business, vacation, military service, or a custody agreement under which a child or stepchild is absent for less than six months in the taxable year of the taxpayer, shall be considered temporary absence due to special circumstances. Such absence will not prevent the taxpayer from being considered as maintaining a household if (i) it is reasonable to assume that the taxpayer or such other person will return to the household, and (ii) the taxpayer continues to maintain such household or a substantially equivalent household in anticipation of such return. [Emphasis added.] The validity of this regulation was upheld by this Court in the case of Grace v. Commissioner,51 T.C. 685 (1969). Petitioner concedes that none of his children resided in the same household that he lived in during any portion of 1975; and although temporary absence from a common abode for educational purposes may not prevent a taxpayer from being considered as maintaining a household under certain circumstances (see sections 1.2-2(c)(1) and 1.143-1(b)(3), Income Tax Regs.), petitioner admits that he had no expectation that Patricia or Ellen would return *591 to his household after college. Manning v. Commissioner,supra;Blair v. Commissioner,63 T.C. 214, 220 (1974), affd. 538 F.2d 155 (7th Cir. 1976); Prendergast v. Commissioner,57 T.C. 475 (1972), affd. 483 F.2d 970 (9th Cir. 1973). Notwithstanding, petitioner argues that since he fully supported his children, sent them to college, and maintained the respective households in which they lived during 1975, it would be unfair to deny him head of household status. It is well established that a taxpayer does not qualify as "head of household" unless he maintains as hishome the household in which his dependents reside. Manning v. Commissioner,supra;Williams v. Commissioner,53 T.C. 58 (1969), affd. 441 F.2d 1168 (9th Cir. 1971); Grace v. Commissioner,supra;Muse v. United States,434 F.2d 349 (4th Cir. 1970), revg. 303 F.Supp. 172 (M.D.N.C. 1969); Biolchin v. Commissioner,433 F.2d 301 (7th Cir. 1970), affg. a Memorandum Opinion of this Court. Since petitioner *592 does not meet this requirement, he is not entitled to compute his 1975 income tax liability at rates prescribed for "head of household" (section 1(b)). Petitioner also argues that applying the physical-occupancy test to the situation between him and his children is unconstitutional because he could receive head of household status if he maintained a household separate from his own for his parents if they qualified as dependents under section 151. See section 2(b)(1)(B) quoted above. He stated at trial "if my mother lived in * * * Virginia and I supported her to the extent that I supported my daughter Patricia, I could claim as * * * unmarried head of household"; he therefore strongly argues that the law is unfair and arbitrary because it allows him head of household status if he maintains a separate household for his dependent mother but not for his dependent children. Petitioner's objections are ill-founded; we have previously upheld the physical-occupancy test of section 1(b)(2), requiring that a taxpayer live with his children, against constitutional attacks. See Bayless v. Commissioner,61 T.C. 394 (1973), and cases cited therein. [9]
*593 Finally, we consider whether petitioner is entitled to a deduction for mortgage interest and real estate taxes paid by Barbara on the residence at 41 Hazelton Circle under sections 163 and 164.
Section 164(a) permits a deduction for real estate taxes paid in the taxable year; however, it is well settled that in order to be entitled to a deduction for taxes, a taxpayer must show not only that he paid the taxes, but that the taxes were imposed upon him. Section 1.164-1(c), Income Tax Regs.; Magruder v. Supplee,316 U.S. 394 (1942); Cramer v. Commissioner,55 T.C. 1125 (1971); Small v. Commissioner,27 B.T.A. 1219 (1933). The real estate taxes on the property of 41 Hazelton Circle were imposed upon and paid by Barbara who was the sole owner of the property. The fact that she used money received from petitioner under the support agreement is not determinative. This Court and others have long held that taxes paid by a husband on a home solely owned by his wife are not deductible by a husband filing a separate *594 return. See Buff v. Commissioner,58 T.C. 224, 233 (1972); Small v. Commissioner,supra;Colston v. Burnet,21 B.T.A. 396 (1930), affd. 59 F.2d 867 (D.C. Cir. 1932), cert. denied 287 U.S. 640 (1932); Dean v. Commissioner,1 B.T.A. 27 (1924). Nor does the fact that petitioner signed an agreement with the bank holding the mortgage guaranteeing the payment of taxes in the event of his former wife's default entitle him to a deduction. In Small v. Commissioner,supra, a husband was disallowed a deduction for real estate taxes paid on property previously transferred to his wife even though he was personally obligated on a mortgage in which he agreed to pay the real estate taxes. Even where a husband is obligated under the terms of a separation agreement to pay real estate taxes on property transferred to his former wife, this Court has disallowed him a deduction for real estate taxes. Kohlsaat v. Commissioner,40 B.T.A. 528 (1939). Here, petitioner guaranteed to pay the taxes only in the event that his wife defaulted; he was not obligated to *595 pay the taxes under the separation agreement, and the taxes were actually paid directly by his former wife to the bank. Clearly under such circumstances petitioner is not entitled to a deduction for real estate taxes paid on the property at 41 Hazelton Circle.
Section 163 allows "a deduction for all interest paid or accrued within the taxable year on indebtedness." This statutory provision means interest on an obligation of the taxpayer claiming it; payments made on obligations of others do not meet the statutory requirement. Sheppard v. Commissioner,37 B.T.A. 279, 281-282 (1938); Colston v. Burnet,supra;Sulzberger v. Commissioner,33 B.T.A. 1093 (1936); Automatic Sprinkler Co. of America v. Commissioner,27 B.T.A. 160 (1932). This Court and others have long held that payments by a husband of interest on mortgages on property owned by his wife are not deductible on his separate return.Colson v. Burnet,supra; Buff v. Commissioner,supra.Petitioner as guarantor in the agreement with *596 the bank was only secondarily liable for the payment of interest. See Rushing v. Commissioner,58 T.C. 996 (1972); Putnam v. Commissioner,352 U.S. 82 (1956). An interest deduction is allowed when a taxpayer is secondarily liable only if the interest was paid in connection with a real estate mortgage and the taxpayer is the legal or equitable owner of such property. Abdalla v. Commissioner,69 T.C. 697, 707 (1978); Nelson v. Commissioner,281 F.2d 1 (5th Cir. 1960), affirming a Memorandum Opinion of this Court.Petitioner was not the legal or equitable owner of the residence at 41 Hazelton Circle; accordingly, he is not entitled to a deduction for the mortgage interest paid on that property. Since the interest in question was an obligation of Barbara and not petitioner and since petitioner was liable for the debt only as a guarantor, he is not entitled to an interest deduction even if the interest was paid by him. [10] However, the record is clear that the mortgage interest was actually paid directly by Barbara, in which case it is clearly not deductible by petitioner. *597 To reflect our conclusions herein, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. ↩
2. Pursuant to General Order No. 6, dated March 8, 1978, the post-trial procedures set forth in Rule 182, Tax Court Rules of Practice and Procedure↩, are not applicable to this case.
3. Patricia, who was studying to become a nurse, worked at the college hospital during vacations and transferred to the University of Virginia in the middle of 1975.↩
4. Absolutely no argument or evidence was submitted in respect to the $233.89 of claimed interest expenses which were disallowed due to lack of substantiation. We deem such disallowance to have been abandoned by petitioner. ↩
5. Although these additional items were not claimed in petitioner's 1975 tax return or in his petition, respondent had no objection to petitioner raising these issues and they were presented and argued at trial and on brief.↩
6. We note that petitioner, an executive, reported over $37,000 in wages received during 1975.↩
7. See also Nelson v. Commissioner,T.C. Memo. 1973-80↩.
8. Sec. 143(b) Certain Married Individuals Living Apart.--For purposes of this part, if-- (1) an individual who is married (within the meaning of subsection (a)) and who files a separate return maintains as his home a household which constitutes for more than one-half of the taxable year the principal place of abode of a dependent (A) who (within the meaning of section 152) is a son, stepson, daughter, or stepdaughter of the individual, and (B) with respect to whom such individual is entitled to a deduction for the taxable year under section 151, (2) such individual furnishes over half of the cost of maintaining such household during the taxable year, and (3) during the entire taxable year such individual's spouse is not a member of such household, such individual shall not be considered as married.↩
9. We further observe that the constitutionality of different tax rates for differently situated taxpayers has been consistently upheld. Jansen v. Commissioner,567 F.2d 828 (8th Cir. 1977); Shinder v. Commissioner,395 F.2d 222 (9th Cir. 1968), affg. a Memorandum Opinion of this Court; Faraco v. Commissioner,261 F.2d 387 (4th Cir. 1958), cert. denied 359 U.S. 925 (1959); Kellems v. Commissioner,58 T.C. 556 (1972), affd. 474 F.2d 1399 (2d Cir. 1973) (per curiam), cert. denied 414 U.S. 831 (1973); Johnson v. United States,422 F. Supp. 958 (N.D. Ind. 1976), affd. sub nom. Barter v. Commissioner,550 F.2d 1239 (7th Cir. 1977), cert. denied 434 U.S. 1012↩ (1978).
10. We note that a deduction is allowed when a taxpayer pays debt interest and is a joint and several obligator on the underlying debt, Neracher v. Commissioner,32 B.T.A. 236 (1935), or where the taxpayer transfers property to his spouse and remains primarily liable on the mortgage. Kohlsaat v. Commissioner,40 B.T.A. 528↩ (1939). However, neither of these situations exist in the case at bar.