UNITED STATES *v.* MARYLAND SAVINGS-
SHARE INSURANCE CORP.

No. 160. Decided October 19, 1970

PER CURIAM.

This is a direct appeal by the United States from a
district court judgment holding unconstitutional § 501
(c)(14)(B) of the Internal Revenue Code of 1954, 26
U. S. C. § 501 (c)(14)(B) (1964 ed., Supp. V), on the
ground that it arbitrarily discriminates between Mary-
land Savings-Share Insurance Corp. (MSSIC), the ap-
pellee, and other similar nonprofit, mutual insurers.

MSSIC was established by the Maryland Legislature
with the object of insuring the accounts of shareholders
of member savings and loan associations. Although first
chartered in 1962, it seeks the benefit of § 501 (c)(14)(B),
which exempts from tax nonprofit corporations such as
appellee but only if organized before September 1, 1957.[1]

---

[1] Internal Revenue Code § 501 (c)(14)(B), 26 U. S. C. § 501
(c)(14)(B) (1964 ed., Supp. V), provides:

"(B) Corporations or associations without capital stock organized
before September 1, 1957, and operated for mutual purposes and

MSSIC's position is that September 1, 1957, is an arbitrary and unconstitutional cutoff date which must be excised from the section, leaving the section applicable to all corporations of the same nature as itself regardless of the date of their creation. We do not agree.

Prior to 1951, all savings and loan associations were exempt from taxation of income derived from their operations. Also exempt were nonprofit corporations that insured the savings institutions. In 1951, the exemption for savings and loan associations was discontinued, on findings that the industry had developed to a point comparable to that of commercial banks. The exemption for insurers, however, was continued, provided they were already in existence as of September 1, 1951. See Revenue Act of 1951, § 313 (b), 65 Stat. 490; S. Rep. No. 781, 82d Cong., 1st Sess., 22–29; 2 U. S. Code Cong. & Ad. News 1969, 1991–1997 (1951). As of that date three private insurers fell within the scope of the section—two of them in Massachusetts and one in Connecticut. Then, in 1956, a fourth such corporation was organized in Ohio, and four years later Congress moved the cutoff date forward to September 1, 1957. Act of April 22, 1960, 74 Stat. 54.

In 1963, a similar bill, H. R. 3297, 88th Cong., 1st Sess., which would have moved the cutoff date forward to January 1, 1963, for the benefit of MSSIC, passed the House, but was never reported out by the Senate Finance Committee. Testimony before the committee indicated

---

without profit for the purpose of providing reserve funds for, and insurance of shares or deposits in—

"(i) domestic building and loan associations,

"(ii) cooperative banks without capital stock organized and operated for mutual purposes and without profit, or

"(iii) mutual savings banks not having capital stock represented by shares."

that continued forward movement of the date might lead to proliferation of state insurers that could hinder the operations and threaten the financial stability of the Federal Deposit Insurance Corporation and the Federal Savings and Loan Insurance Corporation. See Hearing on H. R. 3297 before the Senate Committee on Finance, 88th Cong., 2d Sess., 9–10 (1964).

Against this background, the District Court's invalidation of § 501 (c)(14)(B) was error. The fact that Congress enacts a statute containing a "grandfather clause," which exempts from the general income tax certain corporations organized prior to a specified date, does not of itself indicate that Congress has made an arbitrary classification. Cf. *Stanley* v. *Public Utilities Comm'n,* 295 U. S. 76 (1935); *Sperry & Hutchinson Co.* v. *Rhodes,* 220 U. S. 502 (1911); *Watson* v. *Maryland,* 218 U. S. 173 (1910); *Sampere* v. *New Orleans,* 166 La. 776, 117 So. 827 (1928), aff'd *per curiam,* 279 U. S. 812 (1929). Normally, a legislative classification will not be set aside if any state of facts rationally justifying it is demonstrated to or perceived by the courts. *McDonald* v. *Board of Election Comm'rs,* 394 U. S. 802, 809 (1969); *McGowan* v. *Maryland,* 366 U. S. 420, 426 (1961); *Standard Oil Co.* v. *City of Marysville,* 279 U. S. 582, 586–587 (1929). See also *Watson* v. *Maryland, supra,* at 178. Here the legislative history of H. R. 3297 affirmatively discloses that Congress had a rational basis for declining in 1963 to broaden the exemption by extending the cutoff date of § 501 (c)(14)(B). Just as a State may provide that after a specified date newly established common carriers must obtain state approval before entering into business so as to prevent proliferation of such carriers and excessive use of the State's highways, see *Stanley* v. *Public Utilities Comm'n, supra,* similarly Congress does not exceed its power to tax nor does it violate the Fifth Amendment when it refuses to exempt from tax newly

formed corporations, the multiplication of which might burden otherwise valid federal programs.[2]

Having noted probable jurisdiction by order of October 12, 1970, we now reverse the judgment of the District Court.

*So ordered.*

MR. JUSTICE HARLAN, considering that the issues in this case are deserving of plenary consideration, would set the case for argument.

---

[2] The District Court's reliance on *Mayflower Farms, Inc.* v. *Ten Eyck,* 297 U. S. 266 (1936), was misplaced, since, according to the Court in that case, the legislative record contained no affirmative showing of a valid legislative purpose. We thus need not pass upon the continuing validity of *Mayflower*'s holding. We also find unpersuasive MSSIC's remaining argument that it is an instrumentality of the State and hence entitled to exemption from federal taxation under the doctrine of intergovernmental immunity and under § 115 (a)(1) of the Code, 26 U. S. C. § 115 (a)(1). The District Court properly rejected this argument.