James Edward COZART, d/b/a Cozart Tobacco Warehouse, et al.,

v.

Earl L. BUTZ, Secretary of Agriculture, et al.

Civ. A. No. 75–0379.

United States District Court,
W. D. Virginia,
Abingdon Division.

July 2, 1976.

Francis W. Flannagan, Woodward, Miles & Flannagan, Bristol, Va., for plaintiffs.

Garrett B. Stevens, Dept. of Agriculture, Washington, D. C., E. Montgomery Tucker, Asst. U. S. Atty., Roanoke, Va., for defendants.

## OPINION and JUDGMENT

DALTON, District Judge.

Prior to February 1, 1974, the Secretary of Agriculture announced a national quota for Maryland tobacco.[1] During February, 1974, farmers who grew Maryland tobacco in the United States in 1973, including those

---

1. Maryland tobacco, U.S. Type 32, is a kind of air-cured tobacco raised in southern Maryland and other areas of the United States. When grown and cured with the proper cultural practices in proper soils and climatic conditions, its leaves have a dark cherry-red color. Maryland tobacco leaves have a distinctive vein pattern and taper to a point. The cured Maryland leaf is nearly odorless and is used by American cigarette manufacturing companies for neutral filler. *Complaint*, at 2–3. [For more detailed description see 7 C.F.R. §§ 29.3251–29.3401].

in the burley belt,[2] and who were therefore eligible to vote, cast ballots to determine whether Maryland tobacco should be subject to the proposed marketing quotas during the crop years 1974–75, 1975–76, 1976–77. Almost three-fourths of those casting ballots voted against subjecting themselves to marketing quotas. The result of this vote freed Maryland tobacco growers from the constraint of the proposed marketing quotas.

On September 3, 1974, Public Law 93–411, 88 Stat. 1089, 7 U.S.C. § 1314f became law. Amending the marketing quota provisions of the Agricultural Adjustment Act of 1938,[3] the amendment provided:

[Tobacco marketing quotas].—Notwithstanding any other provision of law, beginning with the 1975 crop, any kind of tobacco for which marketing quotas are not in effect that is produced in an area where producers who are engaged in the production of a kind of tobacco traditionally produced in the area have approved marketing quotas under this Act shall be subject to the quota for the kind of tobacco traditionally produced in the area: Provided, however, That this section shall not apply in any case in which the Secretary or his designee finds any such nonquota tobacco is readily and distinguishably different from any kind of tobacco produced under quota, because of seed variety, cultural practices, method of curing and other factors affecting its physical characteristics, as determined through the application of the Federal Standards of Inspection and Identification of quota types and the tobacco does not possess any of the distinguishable characteristics of a quota type.

.    .    .    .    .

The Secretary of Agriculture has promulgated regulations implementing the amendment[4] which require grading of Maryland tobacco as burley tobacco because the former is a "tobacco for which marketing programs are not in effect that is produced in an area where producers . . . are engaged in the production of a kind of tobacco traditionally produced in the area [and] who have approved marketing quotas for the kind of tobacco traditionally produced in the area    .    .    . ."[5]

Plaintiff Cozart is a proprietor, doing business as Cozart Tobacco Warehouses, and is in the business of holding auction sales for marketing of Maryland and burley tobacco grown in Southwest Virginia. Plaintiff Hendrick is a farmer in Lee County, Virginia, in the business of growing and marketing Maryland and burley tobaccos. Cozart has sustained monetary losses by virtue of the purchase of Maryland tobacco seed for distribution to farmers and burlap sheets for marketing Maryland tobacco. Hendrick, in reliance of growing Maryland tobacco free from quotas, built a barn for the curing of Maryland tobacco.[6]

Plaintiffs ask this court to issue a declaratory judgment:[7]

1) that 7 U.S.C. § 1314f be construed in such a way so as to prevent the Secretary of Agriculture from grading Maryland tobacco as burley tobacco when it possesses readily and distinguishably different characteristics from burley tobacco; or

---

2. Burley tobacco, U.S. Type 31, is an air-cured tobacco raised in the United States. When grown and cured with the proper cultural practices in the proper soils and climatic conditions, its leaves have a light tan or straw-like color. Burley leaves have a distinctive vein pattern and are rounded at the ends. Burley has a strong distinctive aroma and is used as a flavoring agent in the manufacture of American cigarettes. *Complaint*, at 3. [For more detailed description see 7 C.F.R. §§ 29.3001–29.-3182].

Southwest Virginia is a traditionally burley area and burley tobacco growers have subjected themselves to approved marketing quotas.

3. 7 U.S.C. § 1281 et seq.

4. 7 C.F.R. §§ 29.9221 and 29.9261.

5. 7 U.S.C. § 1314f.

6. Since filing this suit a sale has been held at Cozart's warehouses. Maryland tobacco has been graded burley and thus is subject to burley quotas. Plaintiff Hendrick has sustained additional losses by virtue of this determination.

7. 28 U.S.C. §§ 2201 & 2202.

2) that 7 U.S.C. § 1314f is unconstitutional because it deprives plaintiffs of the Fifth Amendment due process rights in that the statute is so vague and self-contradictory as to leave the Secretary of Agriculture no guidance in his duty to promulgate regulations to implement the amendment; or

3) that 7 U.S.C. § 1314f is unconstitutional in that it makes an irrational classification of Maryland tobacco growers according to their geographical location.

By Order of February 13, 1976, this court determined that an actual case or controversy existed, and that, therefore, this court had jurisdiction to hear the case. The court has also heard evidence in the case on two separate occasions. Briefs and Memoranda have been submitted by the parties and the case is ripe for decision.

■ Before discussing the merits, however, the court must face the issue of whether this action should more appropriately be heard by a Three-Judge Court. After considerable deliberation the court rejects defendants' contention that this court has no jurisdiction to hear this case. A single district judge may issue a declaratory judgment that a congressional act is unconstitutional. *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963). Title 28 U.S.C. § 2282 states that Three-Judge Courts are required only in cases where an "interlocutory or permanent injunction restraining the enforcement, operation or execution of any act of Congress" is sought. The section is to be literally construed. *Mitchell v. Dono-*

*van*, 398 U.S. 427, 431, 90 S.Ct. 1763, 1765, 26 L.Ed.2d 378 (1970). "It would hardly be faithful to such a construction to read the statutory term 'injunction' as meaning 'declaratory judgment.'" *Id.*[8] Accordingly, the court feels the case is properly before it.

■ Plaintiffs request the court to construe the amendment in such a way as to require the Secretary of Agriculture to grade Maryland tobacco as Maryland tobacco if it "is readily and distinguishably different from [burley] tobacco . . ., because of seed variety, cultural practices, method of curing and other factors affecting its physical characteristics . . . and [it] does not possess any of the distinguishable characteristics of [burley tobacco]." The Secretary responds by saying that a determination of "readily and distinguishably different . . . characteristics" must be accomplished through "application of the Federal Standards of Inspection and Identification of [burley tobacco]."[9] Plaintiffs agree that application of burley standards will result in a grading of the Maryland tobacco as burley tobacco.[10] But they argue that Congress, by requiring reference to the burley standards when determining whether Maryland and burley tobacco are "readily and distinguishably different," has revealed an inconsistency within the wording of section 1314f. Since application of burley tobacco standards to Maryland tobacco results in a classification of burley tobacco the "readily and distinguishably different" language in the proviso of section 1314f has no meaning.[11]

---

8. The Supreme Court noted, and Justice Douglas argued, that the construction should include declaratory judgments since their effect could be as prohibitive as an injunction. *Id.*, at 431, fn. 3, 433, 90 S.Ct. 1763. (Douglas dissent).

9. These standards are set forth in 7 C.F.R. §§ 29.3001–29.3182.

10. *Plaintiffs' Brief in Support of Granting Declaratory Relief*, at 9.

11. Although the congressional history indicates an expectation that Maryland tobacco would be classified as burley, that expectation also assumed both types would be raised pursuant to

similar cultural practices and similar methods of curing. 3 U.S.Code Cong. & Adm.News 1974, p. 5281. Such an assumption is open to considerable question, as the affidavit of Leo A. Link, Extension Specialist with the Cooperative Extension Service of Virginia Polytechnic Institute, points out. He indicates that "[t]he two kinds of tobacco [Maryland and burley] are cultivated using distinct seed varieties, fertilization practices and curing methods . . ." Link affidavit, at 2. He describes various differences in cultural practices which a Maryland tobacco farmer uses which differ from those used by burley farmers. *Id.*, at 3–4.

The court has serious doubts whether Congress realized that applying burley tobacco standards to Maryland tobacco which is grown using distinctive cultural practices and curing methods would inevitably result in a determination that Maryland should be classified as burley tobacco for quota purposes.[12] In this regard the court agrees with plaintiffs. The statute does include superfluous language. Nevertheless the question is what this court can do about it. The one unambiguous feature of the statute is that burley standards must be used in the determination of whether Maryland tobacco is "readily and distinguishably different" from burley tobacco. The court realizes that the "readily and distinguishably different" language has little meaning, if any, under this construction, since that condition can never be satisfied when burley standards are applied. This construction means all Maryland tobacco grown in traditionally burley areas will now be subject to burley quotas.

■ The wisdom of such a result is certainly open to question. But "[t]he only question for the courts is one of power, not of expediency or wisdom." 16 Am.Jur.2d Constitutional Law § 163 (1964). "Judicially we must tolerate what personally we may regard as a legislative mistake." Harisiades v. Shaughnessy, 342 U.S. 580, 590, 72 S.Ct. 512, 519, 96 L.Ed. 586 (1952).

■ The court also feels the provisions of 7 U.S.C. § 1314f do not aid the congressional purposes for which they were passed. As the court has alluded to earlier in this opinion, Congress only wished to subject to quotas that Maryland tobacco grown in traditionally burley areas which possessed any of the distinguishable characteristics of burley tobacco. 3 U.S.Code Cong. & Adm.News 1974, p. 5281. The burley standards were to be applied to the Maryland tobacco and Congress expected that the Maryland would be subject to the burley quota program. Id.

But this expectation was based on an assumption that only the Maryland tobacco grown under the same cultural practices and methods of curing would, when inspected, come within the burley quotas. Id. As has been constantly emphasized in this opinion, even Maryland tobacco grown under different cultural practices with distinctive methods of curing will, when graded with burley standards, become subject to burley quotas. This was not the congressional purpose, but it is the practical result of the legislation Congress passed. But again this court's hands are tied. An act cannot be declared unconstitutional merely because in the opinion of the courts it is unsuited to its ostensible end. Rast v. Van Deman & L. Co., 240 U.S. 342, 366, 36 S.Ct. 370, 60 L.Ed. 679 (1916).

The court holds that, as a matter of statutory construction, and notwithstanding the clear intention of Congress to the contrary, that the Secretary of Agriculture may inspect Maryland tobacco grown in traditionally burley areas utilizing burley standards, with the result that such Maryland tobacco will therefore be subject to burley quotas, regardless of the fact that said Maryland tobacco may be grown using distinctive cultural practices and methods of curing.

■ The court's emphasis now shifts to whether Congress has the power to pass such an amendment. The Supreme Court declared, in 1939, that sales of tobacco by growers through warehousemen to purchasers for removal outside the state constitutes interstate commerce. Currin v. Wallace, 306 U.S. 1, 59 S.Ct. 379, 83 L.Ed. 441 (1939). That same year the Agricultural Adjustment Act of 1938[13] was upheld by the Supreme Court as an appropriate regulation of interstate commerce because it regulated tobacco marketing as opposed to controlling production.[14] Mulford v. Smith, 307 U.S. 38, 59 S.Ct. 648, 83 L.Ed. 1092 (1939).

12. See Congressman Wampler's statement inserted into the Congressional Record, page H 6800, on July 22, 1974. Wampler affidavit, at 7–8.

14. An attempt at controlling production was held unconstitutional. United States v. Butler, 297 U.S. 1, 56 S.Ct. 312, 80 L.Ed. 477 (1936).

13. 7 U.S.C. § 1281 et seq.

[T]he power given to Congress to regulate interstate and foreign commerce is "complete in itself, may be exercised to its utmost extent, and acknowledges no limitations, other than are prescribed in the constitution." *Gibbons v. Ogden*, 9 Wheat 1, (22 U.S.) 196, 6 L.Ed. 23 [1824]. *Currin v. Wallace, supra*, 306 U.S. at 13–14, 59 S.Ct.2d 386.

There can be no doubt that Congress, therefore, has unlimited power to regulate in the field of tobacco quotas, and this court so holds.

 Plaintiffs also attack this amendment as violative of the due process and equal protection guarantees of the Fifth Amendment.[15] The due process allegations were decided adversely to plaintiffs in *Mulford v. Smith, supra*, and those allegations are therefore without merit.

 With regards to plaintiffs' equal protection allegations, "[c]ourts in effect accord to legislative classifications presumptions of reasonableness and constitutionality where the discrimination is not posited upon race, color, religion or ancestry." 1 *Antieau*, Modern Constitutional Law § 8:81 (1969). The Supreme Court has said:

If the selection or classification is neither capricious nor arbitrary, and rests upon some reasonable consideration of difference or policy, there is no denial of equal protection of the law.

*Brown-Forman Co. v. Kentucky*, 217 U.S. 563, 573, 30 S.Ct. 578, 580, 54 L.Ed. 883 (1910). And recently it was stated:

Normally, a legislative classification will not be set aside if any state of facts rationally justifying it is demonstrated to or perceived by the courts.

*United States v. Maryland Savings-Share Ins. Corp.*, 400 U.S. 4, 6, 91 S.Ct. 16, 17, 27 L.Ed.2d 4 (1970).

Even plaintiffs tacitly admits a rational basis for the amendment;[16] what they object to is the practical effect of the amendment.

Therefore, plaintiffs' allegations that 7 U.S.C. § 1413f deny them equal protection of the laws is without merit.

Accordingly, the court is of the opinion Judgment should be and hereby is entered for defendants. Each party will pay their own costs.

All matters in this proceeding having been terminated, this case is ordered removed from the docket.

---

**15.** The Supreme Court has acknowledged that denials of equality to equals can violate the Fifth Amendment due process clause. *United States v. Petrillo*, 332 U.S. 1, 67 S.Ct. 1538, 91 L.Ed. 1877 (1947); 1 *Antieau* Modern Constitutional Law § 8:95 (1969).

