Clifford ALLEN

v.

**The ELECTRIC POWER BOARD OF the METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY et al.**

No. 75–128–NA–CV.

United States District Court,
M. D. Tennessee,
Nashville Division.

Aug. 13, 1976.

Woods & Woods, Nashville, Tenn., for plaintiff.

D. L. Lansden, Harry Mittwede, Nashville, Tenn., for defendant The Electric Power Board.

Herbert S. Sanger, Jr., Gen. Counsel, Charles A. Wagner, III, Associate Gen. Counsel, Justin M. Schwamm, Asst. Gen. Counsel, James E. Fox, Knoxville, Tenn., for defendant Tennessee Valley Authority.

## MEMORANDUM

MORTON, District Judge.

This action was originally brought by plaintiff in the Chancery Court for Davidson County, Tennessee, seeking declaratory and injunctive relief against the Electric Power Board of the Metropolitan Government of Nashville and Davidson County, Tennessee ("the Power Board") and Nashville Electric Service (NES). Upon the filing of the complaint, the Chancellor granted a temporary restraining order, enjoining defendants from effectuating the April, 1975 rate adjustment increase on customers' bills, pending a hearing on the merits. The original defendants subsequently removed the action to this court.

Plaintiff thereafter filed a motion for remand to the state court, and Tennessee Valley Authority (TVA) filed a motion to intervene as a party defendant pursuant to Rule 24 of the Federal Rules of Civil Procedure. In its memorandum opinion of July 14, 1975, this court denied the motion to remand and granted the motion to intervene. On March 2, 1976, defendant TVA filed a motion for judgment on the pleadings, or, in the alternative, for summary judgment. A similar motion was filed by the other defendants on April 2, 1976.

Plaintiff contends that the method by which the defendant Electric Service implements the rate adjustments on customers' bills constitutes "invidious and arbitrary discrimination in violation of the Fifth and Fourteenth Amendments [sic] to the Constitution [and] 16 U.S.C. section 831(k) . . . ."

In particular, plaintiff complains that the monthly billing cycle employed by NES, based as it is upon a staggered cycle of meter readings, results in customers paying different rates for power used during the same time period merely because their me-

ters are read on different dates.[1] Plaintiff asserts that this disproportionate treatment of persons who are qualitatively indistinguishable in every respect except for the date on which their meters are read constitutes arbitrary discrimination without any rational justification. He maintains that a more equitable, nondiscriminatory method for implementing rate adjustments would be a proration system, whereby the average monthly power consumption for a billing cycle would be prorated between the old and new rates, according to the date on which the adjustment became effective.

■ It should be noted initially that TVA has been vested with express statutory authority to prescribe resale rate schedules for the sale of power by its distributors, and that the discretion delegated to it by Congress, 16 U.S.C. § 831i, is not subject to judicial review. *Mobil Oil Corp. v. Tennessee Valley Authority*, 387 F.Supp. 498 (N.D. Ala.1974); *Ferguson v. Electric Power Bd. of Chattanooga*, 378 F.Supp. 787 (E.D.Tenn. 1974), *aff'd*, 511 F.2d 1403 (6th Cir. 1975); *Tennessee Elec. Power Co. v. Tennessee Valley Authority*, 21 F.Supp. 947 (E.D. Tenn.1938), *aff'd*, 306 U.S. 118, 59 S.Ct. 366, 83 L.Ed. 543 (1939). By parity of reasoning, the imposition of the rate adjustment schedules by TVA's distributors pursuant to their contracts with TVA are likewise not reviewable.

Plaintiff does not appear to question the foregoing proposition, but rather insists that irrespective of TVA's discretion in prescribing rates, where it appears that the manner in which the rate adjustments are *imposed* upon the customers arbitrarily discriminates against some of their number, such method must be enjoined.

■ The sole question [2] for determination in this action, then, is whether the billing procedure adopted by NES, pursuant to its contract with TVA, is rationally related to the objectives sought to be accomplished. For the reasons set out hereinbelow, the court is of the opinion that defendants' billing procedure has a rational basis, and that plaintiff's constitutional rights to due process and equal protection have not been violated thereby.

■ The law is clear that the Equal Protection Clause of the Fourteenth Amendment "does not require identical treatment for all people." *Robinson v. Board of Regents of Eastern Ky. Univ.*, 475 F.2d 707, 710 (6th Cir. 1973), cert. denied, 416 U.S. 982, 94 S.Ct. 2382, 40 L.Ed.2d 758 (1974). Particularly in the area of economic regulation, discrimination is not unconstitutional if the legislative classification has some reasonable basis. *Jefferson v. Hackney*, 406 U.S. 535, 92 S.Ct. 1724, 32 L.Ed.2d 285 (1972); *United States v. Maryland Savings-Share Ins. Corp.*, 400 U.S. 4, 91 S.Ct. 16, 27 L.Ed.2d 4 (1970); *Dandridge v. Williams*, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); *Hooban v. Boling*, 503 F.2d 648 (6th Cir. 1974), *cert. denied*, 421 U.S. 920, 95 S.Ct. 1585, 43 L.Ed.2d 788 (1975).

The Supreme Court aptly enunciated the appropriate standard in *Dandridge v. Williams, supra:*

If the classification has some "reasonable basis," it does not offend the Constitution

---

1. As an illustration, assuming that a rate adjustment became effective on March 2, 1976, all customers whose meters were read on or after that date would be charged the new rate for power they consumed in the preceding one month period, while customers whose meters were read before that date would be charged the old rate for power used during the month prior to the date on which their meters were read. Thus, a customer whose meter was read on February 28, 1976 would pay for power consumption from January 28, 1976 to February 28, 1976 at the old rate, while a customer whose meter was read on March 6, 1976 would pay for power consumption from February 6, 1976 to March 6, 1976 at the new rate. It is readily apparent that the two customers are paying different rates for an identical *period of consumption* —namely February 6 to February 28, 1976—although they are paying the same rate for the same *billing* periods (February 2 to March 1, 1976 and March 2 to April 1, 1976).

2. On June 16, 1976, the court held a hearing in which it entertained arguments by counsel relative to the existence of any disputes as to material facts in this cause. The court is persuaded, as a result of that hearing, that there exists no genuine issue as to any material fact in this action.

simply because the classification "is not made with mathematical nicety or because in practice it results in some inequality." *Lindsley v. Natural Carbonic Gas Co.*, 220 U.S. 61, 78, 31 S.Ct. 337, 55 L.Ed. 369, 377. "The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific." *Metropolis Theatre Co. v. City of Chicago*, 228 U.S. 61, 69–70, 33 S.Ct. 441, 57 L.Ed. 730, 734 (397 U.S. at 485, 90 S.Ct. at 1161).

■ Accordingly, a classification "will not be set aside if any state of facts rationally justifying it is demonstrated to or perceived by the courts." *United States v. Maryland Savings-Share Ins. Corp.*, 400 U.S. 4, 6, 91 S.Ct. 16, 17, 27 L.Ed.2d 4 (1970); *Dandridge v. Williams, supra; McDonald v. Board of Election Comm'rs*, 394 U.S. 802, 89 S.Ct. 1404, 22 L.Ed.2d 739 (1969).

■ Thus, in the instant case, while it is true that the billing system used by defendants does not achieve absolute equality in imposing rate adjustments on its customers, the peculiar problems created by the large number of customers who must be served renders it a reasonable method for dealing with those problems. Any plan for the adjustment of rates in such a large system necessarily results in some inequalities since all of the customers' meters cannot be read at precisely the same time, or even on the same day. Yet there must always be some point to mark the beginning and end of the imposition of a particular rate or rate adjustment. The method utilized by defendants—to make the rate effective for all customers during one entire billing cycle—does achieve equality in one respect, for it provides that each customer pay precisely the same rate for the same electrical consumption during a given billing cycle.[3] The fact that the period of consumption for which each customer is charged does not correspond with mathematical exactitude to the billing cycle in which a particular rate is applicable is an inevitable result of the staggered meter reading procedure. It is thus the practical impossibility of reading all meters simultaneously, rather than the inherent arbitrariness of the billing system itself, which causes the limited disparity of treatment among customers. Equal protection does not require the implementation of that which is a practical impossibility.

■ Plaintiff insists, however, that an alternative method, proration, is both practical and superior to defendants' present billing system. An examination of the problems involved with proration, however, fails to convince this court that the procedure suggested by plaintiff would be either more practical or more equal in its treatment of customers than defendants' current billing system. Plaintiff's theory of proration bears no relation whatever to a customer's actual power consumption. He suggests that energy use should be prorated on the basis of the number of calendar days between meter readings. This method assumes that everyone actually uses the same amount of electricity each day during the billing cycle. In fact, they do not, and plaintiff's method cannot yield an accurate result. Because of numerous factors affecting an individual's power consumption over a month's time—factors such as weather and seasonal changes, vacations away from home, or altered living habits—any formula for proration cannot be exact and tends to create errors and inequities within a customer class. Moreover, there is no guarantee that the additional time and expense required to compute the prorated bills would not more than offset any arguable cost savings to the customer.

In short, the billing method utilized by defendants, while not perfect, is not so unreasonable or discriminatory as to deny plaintiff constitutional due process or equal protection. Nor can it be said to violate the prescription in 16 U.S.C. § 831k against "discrimination as between consumers of the same class," since as suggested above, the inevitable disparity in treatment that it creates does not rise to the level of unlawful discrimination.

---

**3.** See note 1, *supra*.

Indeed, given the practical problems involved in the meter reading procedure, it seems to be a pragmatic, logical, and economically justified method for complying with the Congressional mandate of 16 U.S.C. § 831j, that the TVA adopt procedures "which will permit domestic and rural use at the lowest possible rates . . . ."

Accordingly, since there exists no genuine issue as to material facts in this case, summary judgment in favor of all defendants is proper. The preliminary injunction heretofore issued in the State court by the chancellor on April 15, 1975, will be dissolved, and the action will be dismissed.