## Sun Pipe Line Company v. Tri-State Telecommunications Inc.

*Bruce J. Chasan,* for Sun Pipe Line Co.

*Michael H. Malin* and *Jerrold P. Anders,* for Tri-State Telecommunications Inc.

*Thomas A. Wallitsch* and *Donald A. Wieand,* for Davis Enterprises and Newtown Cablevision.

*Edward C. German,* for Jan Gouza and Pickering, Courts and Summerson.

*James J. McCabe* and *J. Scott Kramer,* for Newtown Township.

*Howard J. Creskoff* and *Alisa G. Field,* for Cipriani.

*Curtis P. Cheyney III,* for Landmark/Newtown.

*Donald L. Toner,* for Sinclair.

*William F. Schroeder,* for Pa. One Call Systems Inc.

*Mitchell S. Pinsly,* for E. A. Design.

*Nicholas A. Leonard,* for William L. Stevenson, et ux, Douglas St. John, et ux.

*Paul R. Beckert Jr.,* for Joseph Hudachek, et ux.

*Burton Spear,* for Sutton.

*John R. Crayton,* for Hoffman.

*Ralph A. Michetti,* for Bowman.

RUFE, *J.,* July 16, 1986 — Sun Pipe Line Company's East Line is a 14-inch pipeline which originates near Marcus Hook, Pa., and terminates in Newark, N.J. On November 12, 1982, a "hole hog" operated by employees of Tri-State Telecommunications Inc., punctured the pipeline at a point beneath Newtown-Richboro Road (Route 332) in Newtown

Township. Consequently, thousands of gallons of unleaded gasoline escaped into the ground of the surrounding Newtown Crossing residential development. The injured residents and damaged property owners in the development have been certified as class action plaintiffs.

Before the court on stipulated facts are the cross-motions of the class action plaintiffs and defendant Sun Pipe Line for partial summary judgment on the issue of strict liability. The court finds defendant strictly liable on both theories advanced by plaintiffs: (1) strict liability for conducting an abnormally dangerous activity under the Restatement (Second) of Torts, §520; and (2) strict liability under Pa.C.S. §3351(g).

## I. STRICT LIABILITY FOR AN ABNORMALLY DANGEROUS ACTIVITY

Under the Restatement approach, which has been generally incorporated by Pennsylvania case law, e.g., *Albig v. Municipal Authority of Westmoreland County,* 348 Pa. Super. 505, 502 A.2d 658 (1985), *Lobozzo v. Adam Eidenmiller Inc.,* 437 Pa. 360, 263 A.2d 432 (1970); the question whether an activity is abnormally dangerous is a question of law. *Albig,* supra. The following criteria apply:

"§520. Abnormally Dangerous Activities

"(a) exisitence of a high degree of risk of some harm to the person, land or chattels of others,

"(b) likelihood that the harm that results from it will be great,

"(c) inability to eliminate the risk by the exercise of reasonable care,

"(d) extent to which the activity is not a matter of common usage,

"(e) inappropriateness of the activity to the place where it is carried on, and

"(f) extent to which its value to the community is outweighed by its dangerous attributes." Restatement, §520.

Although all factors are important, each one need not be present for strict liability to apply "especially if others weigh heavily." Id., comment (f).

The high risk of harm and the difficulty of eliminating that risk are amply demonstrated here. The pipeline accident occurred despite defendant's duly registering with the Bucks County recorder of deeds pursuant to Act 287.[1] What weighs even more heavily, however, is the magnitude of the harm involved. As the court stated in *City of North Glenn v. Chevron, U.S.A. Inc.,* 519 F. Supp. 515, 516 (D. Colo., 1981), gasoline is "not merely fuel, but a high volatile, explosive and toxic substance as well as one of the most powerful solvents commonly available." The extent of plaintiffs' damages, though not as yet precisely determined, shows the potential for pipeline gasoline's causing an environmental catastrophe of considerable magnitude.[2]

Most importantly, the pipeline transportation of large quantities of gasoline underneath a residential community is neither a matter of common usage, nor an activity appropriate to the place where it is carried on. The natural gas pipeline cases[3] cited by

1. Act 287, 73 P.S. §§176, et al, requires the owners of underground utilities to register with the county recorder of deeds; engineers and contractors are required to consult the registered list in preparation for excavation work.

2. The magnitude of a potential accident distinguishes gasoline transportation by pipeline from its transportation by truck, an activity deemed abnormally dangerous in the model jury instruction cited by defendant. See Pennsylvania Suggested Standard Civil Jury Instructions, no. 315 (PBI, 1971).

3. *Anstine v. Columbia Gas of Pennsylvania Inc.,* 98 York L. R. 111 (1984); *Mahowald v. Minnesota Gas Co.,* 344 N.W. 856 (Minn., 1984); *New Meadows Holding Co. v. Washington*

defendant are distinguishable since each of those pipelines directly serviced the homes in a community. Hence, the pipeline represented an activity "carried on by a large percentage of the population." See Restatement, §520, comment (i). Although defendant's pipeline, via its Willow Grove terminal, supplies virtually all Sunoco gasoline sold at Bucks County service stations and some heating oil delivered to Bucks County homes, defendant does not contend that all or even most Newtown area residents regularly consume the pipeline's gasoline.

The present action is also distinguishable from the two Texas cases cited by defendant, *Cities Service Pipe Line Co. v. United States,* 742 F. 2d 626 (6th Cir., 1984), and *Humble Pipe Line Co. v. Anderson,* 339 S. W. 2d 259 (Tex., 1960). Neither case involved a pipeline spill in the midst of a residential development.

Finally, the dangerous attributes of defendant's pipeline are not outweighed by any value to the Newtown community. This is not an instance where "the community is largely devoted to the dangerous enterprise and its prosperity largely depends on it." See Restatement, §520, comment (k). Whatever marginal economic value the pipeline has to the region or society at large is not relevant. As the court stated with respect to truck transportation in *Seigler v. Kulhman,* 502 P.2d 1181, 1187 (Wash., 1972): "That gasoline cannot be practically transported except upon the public highway does not decrease the abnormally high risk arising from its

---

*Water Power Co.,* 687 P. 2d 212 (Wash., 1984); *Moidel v. Peoples Natural Gas Co.,* 397 Pa. 212, 155 A.2d 399 (1959); *Hartman v. Citizens National Gas Co.,* 210 Pa. 19, 59 Atl. 315 (1904).

transportation." See also, Restatement §520, comment (i) (that transportation of explosives may be "necessary to the construction of many public and private works" does not weigh against imposing strict liability).

In sum, defendant's pipeline created a risk so unusual both as to its magnitude and surrounding circumstances as to justify the imposition of strict liability.[4] Sun Pipe is therefore liable irrespective of its own alleged exercise of due care or the alleged negligence of third parties. See Restatement §522.

## II. STRICT LIABILITY UNDER PA.C.S §3351(9)

As set forth at 15 Pa.C.S. §3351:

"Any company laying a pipeline[5] within this commonwealth shall be liable for all damages occasioned by leakage, breaking of pipes or tanks, or any negligence in the construction, maintenance or operation thereof."

Despite the obvious provision of strict liability in the first clause of the statute, defendant contends pipeline companies are not liable for pipe leakage and breaking caused by the negligence of third parties. Neither the language, legislative history of the statute, nor the interpretive case law supports that contention.

When a statute's words are clear and free from ambiguity, the court may not disregard the letter of

---

4. As to defendant's argument that the Restatement excepts common carriers from strict liability, section 521 makes clear that the exception is intended for the benefit of carriers who must engage in abnormally dangerous activities as a matter of public duty. Moreover, 72.6 percent of the gasoline transported via the East Line in 1982 was owned by defendant's affiliate Sun Refining and Marketing Co. and it was Sun Refining's gasoline which spilled.

5. The provision, formerly 15 P.S. §2153(g) applies only to petroleum (oil and gasoline) pipelines.

the law under pretext of pursuing its spirit. 1 Pa.C.S. §1921 (6). The statute in question makes pipeline companies liable for all damages "occasioned by" the leakage or breaking of pipes. The use of the expression "occasioned by," which is arguably broader than "caused by," plainly means that pipeline companies are liable whenever pipeline leakage or breaking occasions damage. That language carries no implication that the liability may be avoided where the leakage or breaking occurred due to the negligence of others, no matter how unforeseeable.

Defendant develops at length the history of the provision's original enactment in the Free Pipe Line Act of 1883. The purpose of the provision, defendant contends, was not to make the pipeline company liable for third-party negligence; rather, its purpose was only to impose liability on the pipeline company where the cause of the spill was unknown, or where the landowner could prove no specific act of negligence. However, the provision as written is not so limited. Therefore, as witnessed by the contemporaneous statement of Rep. Amerman, pipeline companies are liable for damage "whether it can be done through their negligence or that of others." 1883 Leg. Rec. 3157.

The fact that the Legislature has twice amended and once recodified the statute since 1883, without essential change to the "leakage or breaking" provision, supports a broad interpretation. Defendant, nevertheless, argues that the 1943 amendment, which added the second clause concerning negligent acts, qualifies or invalidates the first clause. On the contrary, the clauses address two separate categories of conduct. The first establishes strict liability for leakage and breaking. The second establishes negligence for wrongful acts in the "construction,

maintenance or operation" of pipes where no leakage or breaking occurs.[6]

Defendant's strict liability is further established by *Atlantic Pipe Co. v. Dredge Philadelphia*, 247 F. Supp. 857 (E.D. Pa., 1965). There, two gasoline pipelines traversing the floor of the Schuylkill River were punctured by two 35-ton steel columns lowered into the water as part of a dredging project. Without even considering whether the lowering of the columns was a superseding cause of the gasoline spill, the federal court held the pipeline company strictly liable: "It is plain enough that the Legislature intended that, if damage is done by the escape of oil from a broken or leaking pipe, there shall be no defense available to the pipeline company." 247 F. Supp. at 863.

Though the federal decision is not binding on this court, its precedential value is enhanced by the Legislature's failure, despite the passage of 21 years, to clarify the statute. Cf. *Commonwealth ex rel. Fox v. Fox*, 206 Pa. Super. 159, 212 A.2d 456 (1965) (Legislature's failure to amend statute during 34 years after Superior Court decision created presumption Legislature agreed with judicial interpretation).

*Behling v. Southwest Pipe Lines*, 160 Pa. 359 (1894), is distinguishable from the present facts. There, the heat of an advancing fire caused an oil pipeline to burst, and a spray of oil from the pipeline

6. For example, a pipeline employee might erroneously open a valve believing the pipeline to be out of service, discover that there is in fact petroleum product in the pipeline, but then be unable to get the valve closed again, causing a significant spill.

The legislative history does not disclose why the Legislature enacted the negligence standard in addition to existing common law remedies, but we surmise that the negligence language was related to the amendment's extension of the eminent domain power.

ignited plaintiff's house.[7] The court, apparently ignoring plaintiff's argument that the Free Pipe Line Act imposed strict liability,[8] found the pipeline company not liable. Significantly, the court held the pipeline was not a "concurring cause" of the house fire; rather, the pipeline "was the means or instrument of communicating the fire." 160 Pa. at 366. In the court's view, a haystack would have served as well to transmit the fire. Id., at 365.

The harm in *Behling*, therefore, was not "occasioned by" the pipeline. Here, however, there can be no question that the pipeline was more than merely the instrument for communicating harm. The presence of a gasoline pipeline underneath Newtown Crossing was responsible for the kind of harm that occurred. Thus, defendant's pipeline, not the "hole hog," occasioned plaintiff's damages.

The court finds without merit defendant's additional argument that equal protection is violated if the statute provides strict liability for gasoline pipelines while no similar liability attaches to natural gas pipelines. Where, as here, the subject matter does not warrant "strict scrutiny," the legislative classification must be upheld if the court can perceive any rational basis for it. *United States v. Maryland Savings Share Insurance Corp.*, 400 U.S. 4, 6, 91 S. Ct. 16, 27 L. Ed. 2d 4 (1970); *Springfield School District v. Pennsylvania Department of Education*, 483 Pa. 539, 397 A.2d 1154, 1169. Gasoline and natural gas differ sufficiently in their respective

---

7. The *Behling* opinion states that there was some question whether the main body of the advancing fire had not already begun to consume the house. 160 Pa. at 364.

8. The act is cited in the reporter's summary of argument, 160 Pa. at 363, but the court makes no reference to it in the opinion.

physical properties, means of transportation and environmental effects so as to warrant different treatment by the Legislature.

## ORDER

And now, this July 16, 1986, upon the cross-motions of plaintiffs and defendant Sun Pipe Line Co., it is hereby ordered that plaintiffs' motion for partial summary judgment on the issue of strict liability is hereby granted.