**William J. LEVITT, Plaintiff,**

v.

**STATE OF MARYLAND DEPOSIT IN-SURANCE FUND CORPORATION, for itself, as Conservator for Old Court Savings & Loan, Inc., Chevy Chase Savings & Loan, Inc., Frank Saul, Frederick Dewberry, as Secretary of Licensing and Regulation of the State of Maryland, and Maryland Savings Share Insurance Corporation, Defendants.**

**No. CV 85–4099.**

United States District Court, E.D. New York.

Sept. 18, 1986.

Shaw, Goldman, Licitra, Levine & Weinberg, P.C., Garden City, N.Y., for plaintiff.

Kramer, Levin, Nessen, Kamin & Frankel, New York City, for defendants.

**MEMORANDUM AND ORDER**

WEXLER, District Judge.

Plaintiffs William J. Levitt and the Levitt Community Corp. ("LCC"), both allegedly of New York, commenced this diversity suit on November 13, 1985 against the State of Maryland Deposit Insurance Fund Corporation ("MDIF"), the Chevy Chase Savings and Loan, Inc. ("Chevy Chase"), Frank Saul, Frederick Dewberry, who is Maryland's Secretary of Licensing and Regulation, and the Maryland Savings Share Insurance Corporation ("MSSIC") for negligence, fraud, intentional interference with business relationships, business libel, and breach of fiduciary duty. LCC subsequently withdrew from the lawsuit. Rule 41(a), Fed.R.Civ.P. Levitt seeks damages of no less than $100,000,000. Defendants now move to dismiss the Complaint on the basis of lack of subject-matter jurisdiction, lack of personal jurisdiction, and abstention. Rule 12(b)(1), (2), Fed.R.Civ.P. Alternatively, defendants seek a transfer of this action to the United States District Court for the District of Maryland. 28 U.S.C. § 1404. Both sides have moved for sanctions pursuant to Rule 11. By an Order of this Court, all discovery was stayed pending disposition of the cross-motions.

### I.

This lawsuit is one aspect of the extensive litigation that followed the highly publicized Maryland savings bank crisis in the summer of 1985. In 1984, Levitt, who is a real estate developer, approached the management of a Maryland thrift institution, the Old Court Savings and Loan, Inc. ("Old Court"), in order to obtain financing for a projected Florida real estate venture. After some negotiation, a partnership agreement[1] was entered into among vari-

---

1. The partnership agreement actually consisted of two limited partnerships, First Poinciana Limited Partnership ("First Poinciana") and Second Poinciana Limited Partnership ("Second Poinciana"), both of which are Maryland partnerships. The members of the partnership included Levitt, LCC, Shaw, Goldman, Licitra, Levine & Weinberb, P.C., who are defendants' counsel in this action, Old Court Investment Corporation ("OCIC"), Old Court Joint Ventures ("OCJV"), and other individuals and entities, including Jeffrey Levitt, then Old Court's President. Old Court was not a partner in either First Poinciana or Second Poinciana, but it retained a stake in the venture through OCIC and OCJV, both of which were wholly owned subsidiaries of Old Court. The various partnership agreements are attached as part of Exhibit H to

ous parties that, among other things, obligated Old Court to advance funds for the Florida project. Old Court's mismanagement and financial weakness, which led to Old Court being placed in conservatorship on May 13, 1985,[2] cast considerable doubt on the future of the project. Levitt, who had already experienced difficulty in obtaining cash advances from Old Court before the conservatorship, encountered more resistance as MDIF, Old Court's conservator, began to examine the partnership agreement in detail. Levitt attempted to meet with MDIF and state officials in an effort to procure additional funding, but these labors were without success as on September 20, 1985, MDIF, OCIC, and OCJV sued Levitt, LCC, and the partnership in the Circuit Court of Baltimore City for a judicial dissolution of the partnership and an accounting. In that lawsuit (the "Maryland Action"), which is apparently near trial, the Complaint alleges breach of contract and breach of fiduciary duty.

## II.

In this action, defendants have moved to dismiss the Complaint. They contend first that the Court lacks subject-matter jurisdiction on two grounds: (a) defendants are not "citizens" within the meaning of 28 U.S.C. § 1332; and (b) the Eleventh Amendment bars a suit for damages against defendants, all of whom are part of the State of Maryland. Defendants contend second that there is no basis under New York law for the exercise of *in personam* jurisdiction over any of the defendants. N.Y.Civ. Prac.L. §§ 301–02 (McKinney's 1986). Third, defendants argue that the Court should abstain from exercising jurisdiction under either *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) or *Burford v. Sun Oil*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). Fourth, defendants propose that in the event the lawsuit is not dismissed outright, it should be transferred to the District of Maryland. 28 U.S.C. § 1404(a). Finally, defendants contend fifth that sanctions should be imposed upon plaintiff's counsel because of the multiple fatal defects in the Complaint. Rule 11, Fed.R.Civ.P. Simultaneously, Levitt has cross-moved for sanctions. The essence of Levitt's cross-motion for sanctions is that the conduct of defendants and their counsel, including the filing of an obstructive motion to dismiss or transfer, merits the imposition of sanctions.

## III.

The Court will first address defendants' challenge to this Court's subject-matter jurisdiction.[3] Under the Eleventh Amendment of the Constitution, the federal courts lack competence to entertain a suit for damages by a citizen against one of the fifty states. U.S. Const. amend. 11; *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 105 S.Ct. 900, 79 L.Ed.2d 67 (1984); *Ford Motor Company v. Department of Treasury*, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945). Although a state may not be named as a party, a suit is nonetheless barred if the state is the real party in interest and the recovery will be paid out of the state treasury. *State Highway Commission of Wyoming v. Utah Construction Company*, 278 U.S. 194, 49 S.Ct. 104, 73 L.Ed. 262 (1929); *Dwyer v. Regan*, 777 F.2d 825 (2d Cir.1985). The issue in this case is whether any of the defendants should be treated as an arm of

the affidavit of Shale D. Stiller, Esq. and Exhibit R to defendants' moving papers.

**2.** Old Court's difficulties and a lengthy discussion of the Maryland savings and loan industry are described in Office of Special Counsel, *Report on the Savings and Loan Crisis* (1986).

**3.** Federal courts may consider a motion to transfer an action to another forum without first determining whether there is proper personal jurisdiction. 28 U.S.C. § 1406(a); *Corke v. Sameiet M.S. Song of Norway*, 572 F.2d 77 (2d Cir.1978). Federal courts must, however, find the existence of subject-matter jurisdiction before they may entertain a motion to transfer. *United States ex rel. Jimenez v. Conboy*, 310 F.Supp. 801 (S.D.N.Y.1970). Initially, defendants had challenged subject-matter jurisdiction on the additional ground that LCC was a citizen of Maryland. LCC has since withdrawn from the lawsuit rendering the issue academic.

the state for the purposes of the Eleventh Amendment.[4] *Mount Healthy City School District v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). The issue is decided by reference to federal and not state law, but "the answer depends, at least in part, upon the nature of the entity created by state law." *Mt. Healthy*, 429 U.S. at 280, 97 S.Ct. at 580.

█ The question is one of first impression in this District, but in light of the litigation arising out of the 1985 Maryland thrift crisis, the issue has already been resolved in MDIF's favor by a number of other courts. *See American Casualty Company of Reading, Pa. v. Community Savings and Loan, Inc.*, 635 F.Supp. 539 (D.Md.1986) and cases cited therein. In addition to the reasons put forth in those cases, it is significant that the emergency legislation creating MDIF does not authorize it to pay judgments or settle lawsuits. Therefore, any judgment against MDIF would have to be satisfied out of the state treasury. Md.Fin.Inst.Code Ann. § 10–110 (1985). MDIF's origins also support this conclusion. MDIF is apparently a new entity, created by the Maryland legislature in 1985 in direct response to the banking crisis and as a successor to MSSIC. Defendant Dewberry, for a time MDIF's Action Director, states that MDIF is a state agency under the jurisdiction of Maryland's Department of Licensing and Regulation. Therefore, this Court holds that MDIF is an agency of the State of Maryland under the Eleventh Amendment and immune from a suit for damages in federal court.

Levitt maintains that MDIF is similar to a state highway authority and points to a series of cases holding such state agencies outside the coverage of the Eleventh Amendment. *See, e.g., S.J. Groves & Sons, Inc. v. New Jersey Turnpike Authority*, 268 F.Supp. 568 (D.N.J.1967); *Zeidner v. Wulfrost*, 197 F.Supp. 23 (E.D.N.Y.1961). These citations are, however, distinguishable on their facts. In those cases, state highway authorities were not financed out of the state treasury but raised revenue through tolls and the issuance of bonds. Despite the state's obligation to back the highway bonds, the defendants were not an alter ego of the state because there was no showing that the highway authority was unable to meet its obligations. *E.g., Zeidner*, 197 F.Supp. at 25. By contrast, it is clear in this case that MDIF is unable to meet all of the financial obligations out of its own funds and must look to the state treasury to make up the shortfalls. Indeed, in the midst of the Maryland crisis, the Maryland State Legislature agreed to hold harmless all depositors and, in effect, guarantee all the deposits. Office of Special Counsel, *Report on the Savings and Loan Crises* 453 (1986); Maryland's Governor announced that $100 million would be loaned to MDIF from the state treasury to protect depositors. MDIF, *Questions and Answers, Old Court Savings & Loan, Inc.* 3 (Jan. 22, 1986) (Exhibit GG to defendants' papers in opposition).

It follows, therefore, that MSSIC, MDIF's now-defunct predecessor, is also immune from suit in federal court. Relying on *United States v. The Maryland Savings Share Insurance Corporation*, 400 U.S. 4, 91 S.Ct. 16, 27 L.Ed.2d 4 (1970), Levitt maintains, however, that MSSIC is not instrumentality of the State. 400 U.S. at 7 n. 2, 91 S.Ct. at 18 n. 2. This citation is inapposite. First, in that case the Supreme Court did not address the question of MSSIC's status in the context of the Eleventh Amendment. Second, all of the

---

4. The question of whether an entity is an "arm" or "alter ego" of the state is, in a sense, the flip side of whether an entity is a citizen under the diversity statute. "A state is not ... a citizen and a suit between a state and a citizen of another state is not between citizens of different states." *Krisel v. Duran*, 386 F.2d 179, 181 (2d Cir.1967) (per curiam) (citing *Postal Telegraph Cable Co. v. State of Alabama*, 155 U.S. 482, 15 S.Ct. 192, 39 L.Ed. 231 (1894)). Therefore, to the extent that all defendants are immune from suit under the Eleventh Amendment, this Court also lacks diversity jurisdiction to hear the controversy. Although the reverse need not always be so, in this case defendants will be citizens of Maryland for the purposes of diversity if they are deemed not to be an "arm" of the State of Maryland.

functions of the MSSIC have been taken over by MDIF, an entity that is an arm of the State.

Frederick Dewberry, who is sued here as Maryland's Secretary of Licensing and Regulation, is also immune. Suits against state officials are barred by the Eleventh Amendment insofar as the lawsuit is actually against the state itself. *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Here the plaintiff's only claims are those brought under state law. There is no request for prospective injunctive relief and no allegation that federal law was violated. Nor is this a situation where the damages are ancillary to the main relief sought because damages are the only remedy sought by plaintiff. Therefore, the claims against Dewberry are barred by the Eleventh Amendment. *Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979).

It is a very different matter, however, with respect to defendants Chevy Chase and Frank Saul, Chevy Chase's President and sole stockholder. By way of background, on June 7, 1985, Chevy Chase was designated manager of Old Court by Judge Kaplan of Baltimore City Circuit Court and charged primarily with the responsibility of evaluating Old Court's assets and liabilities. Chevy Chase was to be paid for its labors and the State of Maryland agreed to indemnify Chevy Chase and its agents for any claims arising out of its role as manager. The arrangement lasted until December of 1985 when Chevy Chase became a consultant to MDIF.

If there is any basis upon which Chevy Chase and Saul are immune from suit under the Eleventh Amendment, it is the order of Judge Kaplan making Chevy Chase a temporary employee of MDIF and indemnifying it for its acts. Chevy Chase and Saul argue that any suit for damages is, in effect, a suit against the State of Maryland because a recovery would be paid out of the state treasury. Levitt contends that so long as MDIF is not an arm of the State, MDIF's employee cannot be an arm of the State.

After a careful examination of the relationship between Chevy Chase and MDIF, the Court concludes that Chevy Chase is not an "arm" or "alter ego" of the State of Maryland. Chevy Chase is a private savings bank that was, in effect, hired temporarily by MDIF for its banking and management expertise. In an effort to keep Old Court operating in the midst of conservatorship, Judge Kaplan appointed Chevy Chase to manage Old Court on a day-to-day basis and act as a consultant on the future disposition of Old Court's assets. Chevy Chase was to analyze Old Court's assets and liabilities, but all major policy matters were explicitly reserved by Judge Kaplan to MDIF as Old Court's conservator and receiver. The terms of Judge Kaplan's order specifically limited the duration of Chevy Chase's position to thirty days unless extended by a further order of the court. Chevy Chase is not a state agency, its officers are not chosen by state officials, and it has no public borrowing authority. Its employees are not, in any sense, public servants and its funds are not deposited into the state treasury. As the manager of Old Court and a temporary employee of MDIF, Chevy Chase was responsible strictly for managing Old Court's many commercial properties. In this Court's view, Chevy Chase and its president are outside contractors, hired by MDIF to perform a specific function on a fee-for-service basis.

Furthermore, Judge Kaplan's order requiring MDIF to indemnify Chevy Chase does not bring an otherwise private corporation within the ambit of the Eleventh Amendment. The Eleventh Amendment does not bar a suit for damages against *state* employees in their individual capacities merely by virtue of the state's decision to indemnify the employees. *Scheuer v. Rhodes*, 416 U.S. 232, 237, 94 S.Ct. 1683, 1687, 40 L.Ed.2d 90 (1974). The rule can hardly be different for private individuals or corporations that are hired temporarily as state employees, consultants, or outside contractors. To hold otherwise would allow a state to immunize pri-

vate parties from liability in federal court by the mere expedient of indemnifying them.

Therefore, the Court concludes that MDIF, MSSIC, and Dewberry are arms of the State of Maryland for the purposes of the Eleventh Amendment and that this Court lacks subject-matter jurisdiction to entertain a suit against them for damages. Accordingly, the Complaint is dismissed as against them. The Court also concludes that Chevy Chase and Saul are not arms of the State but citizens of Maryland suable in diversity.

## IV.

■ Now that the issues relating to subject-matter jurisdiction have been resolved, the Court turns to the motion to transfer the action to the District of Maryland. Transfer is governed by two statutes. 28 U.S.C. § 1404(a) applies to situations in which venue is proper in the transferor court.[5] 28 U.S.C. § 1406(a) controls actions in which venue in the transferor court is improper.[6] The determination as to whether to grant a motion to transfer is within the broad discretion of the court, *A. Olinick & Sons v. Dempster Brothers, Inc.*, 365 F.2d 439 (2d Cir.1966); *Goldstein v. Rusco Industries, Inc.*, 351 F.Supp. 1314 (E.D.N.Y.1972); and a decision to transfer is an interlocutory, nonappealable order. *Aaacon Auto Transport Inc. v. Ninfo*, 490 F.2d 83 (2d Cir.1974); *Stelly v. Employees National Insurance Co.*, 431 F.2d 1251 (5th Cir.1970), *cert. denied*, 401 U.S. 908, 91 S.Ct. 866, 27 L.Ed.2d 806 (1971); *D'Ippolito v. American Oil Co.*, 401 F.2d 764 (2d Cir.1968). *See also* 15 C. Wright, A. Miller, and A. Cooper, *Federal Practice and Procedure* §§ 3827, 3895 (1986).

■ The conclusion that transfer should be ordered is in no way altered even if venue in the Eastern District of New York is improper and § 1406(a) rather than § 1404(a) controls the Court's decision. § 1404(a) poses the issue of whether a case should continue in its present forum or be transferred; § 1406(a) confronts a court with the question of whether the case shall be dismissed or, "in the interest of justice," be transferred to a forum in which it could properly have been brought.

■ Defendants contend that the action could not have been brought in this District because of the absence of personal jurisdiction, but the Court need not elect between § 1404(a) and § 1406(a). A court has the power to transfer a case, regardless of the propriety of venue in the transferor district, where transfer would serve the interest of justice. *Corke v. Sameiet M.S. Song of Norway*, 572 F.2d 77 (2d Cir.1978). *Fresca v. Arnold*, 595 F.Supp. 1104 (E.D.N.Y.1984).

■ Assuming arguendo that the Eastern District of New York is the proper venue for this case, any decision to transfer must be effected under § 1404(a). The clear language of the statute requires that the case could properly have been brought in the proposed transferee district. Additionally, before a court will order a case transferred under § 1404(a), the moving party must meet its burden of making a clear showing that the transferee district is more convenient and that the interests of justice would be better served by transfer. *St. Cyr v. Greyhound Lines, Inc.*, 486 F.Supp. 724, 727 (E.D.N.Y.1980); *Kreisner v. Hilton Hotel Corp.*, 468 F.Supp. 176, 177 (E.D.N.Y.1979); *Scheinbart v. Certain-Teed Products Corp.*, 367 F.Supp. 707, 709 (S.D.N.Y.1973). Several specific factors must be considered in determining if this burden has been met: (1) the convenience of the parties; (2) the convenience of material witnesses; (3) the availability of process to compel the presence of unwilling

---

**5.** § 1404(a) provides:

For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

**6.** § 1406(a) states:

The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

witnesses; (4) the cost of obtaining willing witnesses; (5) the relative ease of access of sources of proof; (6) where the events in issue took place; (7) the practical problems indicating where the case can be tried more expeditiously and inexpensively; and (8) the interests of justice in general. *See, e.g., St. Cyr,* 486 F.Supp. at 727; *Kreisner,* 468 F.Supp. at 177; *Schneider v. Sears,* 265 F.Supp. 257, 263 (S.D.N.Y.1967). The final factor, "the interests of justice in general," is a consideration "broad enough to cover the particular circumstances of each case, which in sum indicate that the administration of justice will be advanced by a transfer." *Schneider,* 265 F.Supp. at 263.

 Transfer is particularly appropriate where there is a prior pending lawsuit in the transferee district involving the same facts, transactions, or occurrences. *Berg v. First American Bankshares, Inc.,* 576 F.Supp. 1239 (S.D.N.Y.1983); *Durham Production v. Sterling Film Portfolio,* 537 F.Supp. 1241 (S.D.N.Y.1982). Transfer of an action to a district where a related case is pending enables more efficient conduct of pretrial discovery, saves witnesses time and money in both trial and pretrial proceedings, and avoids duplicative litigation and inconsistent results, thereby eliminating unnecessary expense to the parties while at the same time serving the public interest. *Schneider,* 265 F.Supp. at 266–67.

 An application of these principles to the facts of this case leads to the conclusion that the action should be transferred to the District of Maryland. The parties are already involved in litigation in Maryland state court over the facts and circumstances of this lawsuit and report that the Maryland Action is ready for trial. Allowing this lawsuit to remain in New York would be wasteful and unnecessarily duplicative. Any hardship to the New York plaintiff incurred by being forced to prosecute his lawsuit in Maryland is outweighed by the consolidation of all proceedings in one forum. Levitt may amend his answer in the Maryland Action to assert as counterclaims the causes of action pressed in this action. To the extent he chooses not to do so it is unlikely that Levitt will be prejudiced by prosecuting this lawsuit in Maryland. Most of the events giving rise to this lawsuit occurred there and the two remaining defendants are residents of that state. In Maryland Levitt will also have greater access to material witnesses, documents, and other sources of evidence. Insofar as Levitt has a claim for damages against MDIF, Dewberry, or the State of Maryland, in all probability, the relief against them can only be obtained through Maryland courts. Transfer is also appropriate given the paucity of contacts between New York and the circumstances of this case.

 Bearing all this in mind, while the Court respects plaintiffs' right to file suit in the forum of their choice, given the absence of any material connection or significant contact between the forum state and the events allegedly underlying the claim, this choice is not entitled to the weight generally accorded such a decision. *Helfant v. Louisiana & Southern Life Insurance Co.,* 82 F.R.D. 53, 56–57 (E.D.N.Y. 1979); *Foster v. Litton Industries, Inc.,* 431 F.Supp. 86, 87 (S.D.N.Y.1977). All things taken into account, the Court concludes that the lawsuit should be transferred to the District of Maryland.

## V.

Accordingly, defendants' motion to dismiss the Complaint against MDIF, MSSIC, and Dewberry is granted and denied as to all other defendants. Defendants' motion to abstain is denied at this time.[7]

Defendants' motion to transfer the case to the District of Maryland is granted. The cross-motions for sanctions are denied. The Clerk of the Court is directed to close the file for transfer to the District of Mary-

---

7. Defendants may wish to renew their motion to abstain in light of the Maryland federal court's decision in *Community Savings & Loan, Inc. v.* *Citibank, N.A.,* M–85–4005 (D.Md. October 10, 1985) (Miller, J.).

land and enter judgment in favor of defendants MDIF, MSSIC, and Dewberry.

SO ORDERED.